**EXHIBIT A**

1.      Complaint
2.      Minute Entry re. Notice of Intent to Dismiss
3.      Summons to Corizon Health, Inc.
4.      Summons to Corizon, LLC
5.      Summons to Corizon, Inc.
6.      Summons to State of Arizona
7.      Affidavit of Service re. Corizon, Inc.
8.      Affidavit of Service re. Corizon Health, Inc.
9.      Affidavit of Service re. Corizon, LLC
10.     Affidavit of Service re. State of Arizona
11.     Demand for Jury Trial
12.     Certificate of Compulsory Arbitration
13.     Defendant Corizon Answer
14.     Defendant State of Arizona Answer
15.     Motion for Leave to Amend Complaint
16.     Order Granting Plaintiff Leave to Amend Complaint
17.     First Amended Complaint

Skip To MainContent

[                    ]  [ Search ]

Civil Court Case Information - Case History

## Case Information

| | | | |
|---|---|---|---|
| Case Number: | CV2018-008861 | Judge: | French, Colleen |
| File Date: | 6/14/2018 | Location: | Downtown |
| Case Type: | Civil | | |

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| Jennifer Power | Plaintiff | Female | Anne Findling |
| State Of Arizona | Defendant | | Mandi Karvis |
| Corizon Health Inc | Defendant | | Mandi Karvis |
| Corizon Inc | Defendant | | Mandi Karvis |
| Corizon L L C | Defendant | | Mandi Karvis |
| Correct Care Solutions L L C | Defendant | | Pro Per |
| Geo Group Inc, The | Defendant | | Pro Per |
| Dale A King | Defendant | Male | Pro Per |
| Antonio R Tuccino | Defendant | Male | Pro Per |
| Steven Gallardo | Defendant | Male | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 2/6/2019 | ORD - Order | 2/6/2019 | |

NOTE: that the First Amended Complaint attached as Exhibit 1 to Plaintiffs' Motion may be filed and made part of the record.

| | | | |
|---|---|---|---|
| 2/6/2019 | AMC - Amended Complaint | 2/6/2019 | |

NOTE: First Amended Complaint

| | | | |
|---|---|---|---|
| 1/7/2019 | MTA - Motion To Amend | 1/8/2019 | |

NOTE: Motion for Leave to Amend Complaint

| | | | |
|---|---|---|---|
| 10/26/2018 | ANS - Answer | 10/29/2018 | |

NOTE: Answer

| | | | |
|---|---|---|---|
| 10/3/2018 | ANS - Answer | 10/4/2018 | |

NOTE: Answer to Plaintiff's Complaint on behalf of Defendants Corizon Health, Inc., Corizon Inc., Corizon LLC, and State of Arizona -- EFILE BILLING $245

| | | | |
|---|---|---|---|
| 10/3/2018 | NJT - Not Demand For Jury Trials | 10/4/2018 | |

NOTE: Demand for Jury Trial on behalf of Defendants

| | | | |
|---|---|---|---|
| 10/3/2018 | CCA - Cert Compulsory Arbitration | 10/4/2018 | |

NOTE: Certificate of Compulsory Arbitration on behalf of Defendants

| | | | |
|---|---|---|---|
| 8/27/2018 | AFS - Affidavit Of Service | 8/30/2018 | |

NOTE: CORIZON INC

| | | | |
|---|---|---|---|
| 8/27/2018 | AFS - Affidavit Of Service | 8/30/2018 | |

NOTE: CORIZON HEALTH INC

| | | | |
|---|---|---|---|
| 8/27/2018 | AFS - Affidavit Of Service | 8/30/2018 | |

NOTE: CORIZON LLC

| | | | |
|---|---|---|---|
| 8/27/2018 | AFS - Affidavit Of Service | 8/30/2018 | |

NOTE: STATE OF ARIZONA

| | | | |
|---|---|---|---|
| 8/27/2018 | SUM - Summons | 8/29/2018 | |
| 8/27/2018 | SUM - Summons | 8/29/2018 | |
| 8/27/2018 | SUM - Summons | 8/29/2018 | |
| 8/27/2018 | SUM - Summons | 8/29/2018 | |
| 8/22/2018 | 322 - ME: Notice Of Intent To Dismiss | 8/22/2018 | |
| 6/14/2018 | COM - Complaint | 6/15/2018 | |
| 6/14/2018 | CSH - Coversheet | 6/15/2018 | |
| 6/14/2018 | CCN - Cert Arbitration - Not Subject | 6/15/2018 | |
| 6/14/2018 | NJT - Not Demand For Jury Trials | 6/15/2018 | |
| 6/14/2018 | CER - Certificate | 6/15/2018 | |

NOTE: OF NOTICE INTENT TO PROVIDE EXPERT TESTIMONY PURSUANT TO A R S 12-2602

## Case Calendar

**There are no calendar events on file**

## Judgments

**There are no judgments on file**

CHRIS DEROSE
Clerk of the Superior Court
By Ashley Hatch, Deputy
Date 06/14/2018 Time 14:52:40
Description                    Amount
-------- CASE# CV2018-008861 --------
CIVIL NEW COMPLAINT            333.00
------------------------------------
TOTAL AMOUNT                   333.00
          Receipt# 26646940

1   Joel B. Robbins (011065)
2   Anne E. Findling (010871)
    ROBBINS & CURTIN, P.L.L.C.
3   301 E. Bethany Home Road, Suite B-100
    Phoenix, Arizona 85012-0001
4   Telephone: (602) 285-0100
5   Facsimile: (602) 265-0267
    joel@robbinsandcurtin.com
6   anne@robbinsandcurtin.com

7
    *Attorneys for Plaintiff*
8

9
          IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
10
              IN AND FOR THE COUNTY OF MARICOPA
11

12   JENNIFER POWER, individually and
13   on behalf of the statutory beneficiaries    No.   CV2018-008861
     of MONNIE WASHBURN, Deceased,
14
15              Plaintiff,

16      vs.                                       **COMPLAINT**

17   STATE OF ARIZONA, a governmental            (Wrongful Death)
18   entity; CORIZON HEALTH, INC., a
     Missouri corporation, doing business in the
19   State of Arizona; CORIZON, INC., a          **(Jury Trial Requested)**
     Missouri corporation, doing business in the
20   State of Arizona; CORIZON, LLC, a foreign
21   limited liability company,

22              Defendants.

23

24

25      Plaintiff Jennifer Power, individually and on behalf of the statutory

26   beneficiaries of Monnie Washburn, for her Complaint against Defendants,

27   allege as follows:

28

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

## PARTIES

1.      Plaintiff, Jennifer Power, is the wife of Monnie Washburn, deceased, and brings this action individually and on behalf of the statutory beneficiaries of Monnie Washburn.

2.      Mr. Washburn was also survived by two children, who are statutory beneficiaries pursuant to A.R.S. § 12-612 (A).

3.      Decedent Monnie Washburn was a resident of the State of Arizona. Although incarcerated within the Arizona Department of Corrections at the time of his death, Mr. Washburn's residence was in Maricopa County, Arizona prior to his incarceration.  Mr. Washburn died on June 20, 2017.

4.      The State of Arizona is a body politic; the Arizona Department of Corrections (ADC) is a department of the State of Arizona.

5.      The State of Arizona has a non-delegable duty for the care and custody of inmates within the Arizona State Prison System, including providing health care services to those incarcerated in the system.

6.      The State of Arizona is responsible for the actions of ADC, its medical and mental health staff, its corrections staff, and other ADC employees.

7.      Pursuant to A.R.S. § 31-201.01, any and all causes of action which may arise out of tort caused by the director, prison officers or employees of the department, within the scope of their legal duty, shall run only against the State.

8.      Defendants Corizon Health, Inc., Corizon, Inc. and Corizon LLC are related, for-profit foreign business entities, who contract and conduct business within the State of Arizona. These entities will be referred to as "Corizon."

9.      Corizon has a corporate office in Maricopa County, Arizona. Corizon also conducts business in Maricopa County and other locations within the State of Arizona.

10.     Effective March 4, 2013, Defendant Corizon Health, Inc. contracted with the State of Arizona / Arizona Department of Corrections to provide full service medical, mental health, and dental care (collectively "healthcare") to the inmates housed at ASPC-

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Douglas, ASPC-Phoenix, ASPC-Eyman, ASPC-Safford, ASPC-Florence, ASPC-Tucson, ASPC-Lewis, ASPC-Winslow, ASPC-Perryville, ASPC-Yuma.

11.  The State of Arizona retained monitoring responsibility for Defendant Corizon's provision of health care to inmates within the Arizona Department of Corrections prison system.

12.  The State of Arizona requires inmates to be provided opportunities for reasonable and appropriate access to a community standard of health care and appropriate referrals for inmates who appear for treatment.

13.  Corizon has caused events to occur in the State of Arizona and is subject to this Court's jurisdiction.

## JURISDICTION AND VENUE

14.  The amount in controversy exceeds the jurisdictional threshold of the Court.

15.  A timely notice of claim pursuant to A.R.S. § 12-821.01 was served on Defendant State of Arizona on December 15, 2017.  More than sixty (60) days have passed since this Notice of Claim was served upon the Defendant. By operation of statute, the claim is deemed denied.

16.  This is an action against the State of Arizona. Venue is proper in the Superior Court in and for Maricopa County.

## FACTUAL BACKGROUND

17.  At the time relevant to the present dispute, Monnie Washburn was an inmate within the Arizona Department of Corrections, housed at the ASP-Kingman facility.

18.  Monnie Washburn was serving a term of incarceration at ASPC – Kingman, in Mohave County, Arizona, with a maximum end date of February 15, 2019.

### Medications

19.  Corizon prescribed and administered to Mr. Washburn the following medications: Prozac, Risperdal, and Cogentin. All of these medications increased Mr.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax:   (602) 265-0267

1    Washburn's risk of hyperthermia.

2        20.    Risperdal (risperidone) is known to cause disruption of body temperature

3    regulation. Both hyperthermia and hypothermia have been reported in association with

4    oral risperidone. Per labeling, caution is advised when patients will be exposed to

5    temperature extremes.

6        21.    Individuals such as Mr. Washburn who take antipsychotic agents, including

7    risperidone, are also at risk for neuroleptic malignant syndrome (NMS). This syndrome

8    can cause high fever (102-104 degrees), muscle stiffness, excessive sweating, anxiety, fast

9    or abnormal heart beat, increased saliva, and quick breaths.

10       22.    Cogentin (benztropine), when given concomitantly with drugs that have

11   anticholinergic or antidopaminergic activity (such as Riseridone), may cause fever or heat

12   intolerance. Paralytic ileus, hyperthermia, and heat stroke, with associated fatalities have

13   been reported.

14       23.    Prozac (fluoxetine) may cause serotonin syndrome. This adverse event may

15   lead to autonomic instability, which may include hyperthermia.

16       24.    The risks associated with these medications are known by any reasonably

17   trained prescriber.

18                                    **Transport**

19       25.    On the morning of June 20, 2017, Mr. Washburn was being transferred from

20   the State Prison Complex in Kingman to the State Prison Complex in Tucson, via an ADC

21   bus in which the air conditioning was reportedly not functioning.  It was also reported that

22   the bus was overheating, and was only able to travel at a speed of 30-35 miles per hour

23   due to the heat.  According to the National Weather Service, the temperature in Tucson hit

24   116 degrees that day.

25       26.    Correctional Officer II Dale A. King (CO II King) was driving the transport

26   van.

27       27.    Correctional Officer II Antonio R. Tuccino (COII Tuccino) was present in

28   the van.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

28.     Sergeant Steven Gallardo acted in a supervisory role to COII King and COII Tuccino.

29.     At approximately 3:00 p.m., it was reported that Mr. Washburn began to behave erratically and tried to remove his restraints. By 4:30 p.m., while still on the bus, Mr. Washburn fell ill, had seizure like symptoms, began vomiting and became unresponsive. ICS was not initiated nor was aid rendered to him.

30.     Licensed Practical Nurse Nidia Salazar, an employee and/or agent of Corizon, and an "on-call" doctor made remote recommendations to COII King and COII Tuccino regarding Mr. Washburn's medical status.

31.     COII King and COII Tuccino did not initiate ICS, and instead had Mr. Washburn lay on the floor of the bus, while they continued on to the Tucson DOC Complex, arriving approximately three hours later.

32.     Medical staff from the prison were contacted and were standing by in the sally port, and Tucson Fire Department paramedics were en route when the bus arrived. Monnie Washburn was taken off of the bus, apneic and unresponsive, and CPR was initiated. CPR continued for another 30 minutes before paramedics pronounced death.

33.     The Pima County Medical Examiner's Office concluded that Mr. Washburn died of heat stroke/hyperthermia.

### CLAIMS FOR RELIEF
#### COUNT ONE
#### NEGLIGENCE
#### (State of Arizona / Corizon)

34.     The foregoing paragraphs are incorporated as if fully set forth herein.

35.     Defendant State of Arizona through ADC owes and owed a non-delegable duty of care to inmates in its custody, including Monnie Washburn, which duty includes taking reasonable steps to recognize the need for, and provide, medical attention and intervention.

36.     Defendant State of Arizona through ADC owes and owed a non-delegable

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

duty of care to inmates in its custody, including Monnie Washburn, which duty also includes taking reasonable and necessary steps to reduce the risk that inmates taking certain medications are exposed to extreme temperatures known to put those inmates at risk for hyperthermia and other medication-related complications.

37.     Corizon owes and owed a duty of care to Mr. Washburn to inform ADC of his medication status and any risk inherent in that medication status.

38.     Corizon owes and owed a duty of care to Mr. Washburn to provide accurate and appropriate information to minimize the risk of complications from known medical conditions and to adequately respond to urgent and/or emergency medical conditions.

39.     Defendants also observed, and failed to report or otherwise act upon their observations, that Monnie Washburn was dangerously ill and needing medical intervention and supervision.

40.     Defendants were negligent and/or grossly negligent by failing to recognize Monnie Washburn's need for medical intervention, and by having failed to provide such medical attention.

41.     Defendants breached their duty of care (1) by failing to take appropriate steps to protect Mr. Washburn for known risks of complications of his medications; (2) by forcing Mr. Washburn to endure life-threatening conditions over a period of time; (3) by ignoring his pleas for help; (4) by ignoring the warnings of other inmates that Mr. Washburn was in trouble; and (5) by failing to provide Mr. Washburn access to timely medical care for his emergent medical condition.

42.     Defendants' negligence was the direct and proximate cause of the death of Plaintiffs' decedent Monnie Washburn; such death would not have happened without Defendants' negligence.

43.     Monnie Washburn's death caused injury and loss to Plaintiffs and the statutory beneficiaries of Monnie Washburn.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

**COUNT TWO**
**MEDICAL NEGLIGENCE**
**(Corizon)**

44.     The foregoing paragraphs are incorporated as if full set forth herein.

45.     As set forth above, Corizon prescribed medications to Monnie Washburn that it knew would increase Mr. Washburn's risk of adverse side effects, including hypothermia and death.

46.     Corizon failed to take steps to mitigate the risk of death, including, upon information and belief, failing to warn Defendant State of the risk of transporting Mr. Washburn in a transport van without air conditioning in the Arizona summer heat.

47.     Once Corizon learned of Mr. Washburn's emergent condition during transport, Corizon failed to provide appropriate advice to officers, including the recommendation that Mr. Washburn be taken immediately to a higher level of care to prevent his death.

48.     Defendants ADOC, Corizon, and their employees are health care providers and, as such, owe and owed Monnie Washburn the duty to exercise that degree of care, skill, and learning that would be expected under similar circumstances of a reasonably prudent health care provider within this state.

49.     Were it not for the failure of Defendants and their employees to comply with the applicable standard of care, Monnie Washburn would have received timely medical treatment and would not have died.

50.     Monnie Washburn's death caused injury and loss to Plaintiffs and the statutory beneficiaries of Monnie Washburn.

**COUNT THREE**

**(All Defendants)**

51.     As set forth above, Monnie Washburn's death was caused by wrongful act, neglect, or default.

52.     The act, neglect, or default as set forth above, if death had not ensued,

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

1   would have entitled Mr. Washburn to maintain an action to recover damages in respect

2   thereof.

3       53.     As a result Defendants are liable to Plaintiff and the statutory beneficiaries

4   of Monnie Washburn for damages that resulted from Mr. Washburn's death.

5                          **PRAYER FOR RELIEF**

6       WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

7       A.     For special damages;

8       B.     For lost wages, income, and other economic losses;

9       C.     For other general damages, including but not limited to pain and suffering,

10   loss of enjoyment of life and other emotional trauma;

11      D.     For exemplary damages to the extent permitted by law;

12      E.     For taxable costs and pre- and post-judgment interest to the extent permitted

13   by law;

14      F.     Such other relief as the Court deems just and proper.

15

16      **DATED** this June 14, 2018.

17

18                          ROBBINS & CURTIN, p.l.l.c.

19

20                  By: _Anne E. Findling_____

21                      Anne E. Findling
                        *Attorney for Plaintiff*

22

23

24

25

26

27

28

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

| Office Distribution | **SUPERIOR COURT OF ARIZONA**<br>**MARICOPA COUNTY** | **\*\*FILED\*\***<br>08/22/2018<br>by Superior Court Admin<br>on behalf of Clerk of the<br>Superior Court |
|---|---|---|

08/18/2018                         **COURT ADMINISTRATION**                Ct. Admin<br>                                                                  Deputy

**Case Number:** CV2018-008861

**Jennifer Power**

**V.**

**State Of Arizona**

The Judge assigned to this action is the Honorable Hugh Hegyi

### NOTICE OF INTENT TO DISMISS FOR LACK OF SERVICE

You are hereby notified that the complaint filed on 06/14/2018 is subject to dismissal pursuant to Rule 4 (i) of the Arizona Rules of Civil Procedure. The deadline for completing service is 09/12/2018. If the time for completing service has not been extended by the court and no defendants have been served by this date, the case will be dismissed without prejudice.

All documents required to be filed with the court should be electronically filed through Arizona Turbo Court at www.azturbocourt.gov.

# Superior Court of Maricopa County - integrated Court Information System
## Endorsee Party Listing
Case Number: CV2018-008861

| Party Name | Attorney Name | |
| --- | --- | --- |
| Jennifer Power | Anne E Findling | Bar ID:  010871 |

ORIGINAL

**Person Filing:** Anne E. Findling
**Address (if not protected):** 301 East Bethany Home Road #B-100
**City, State, Zip Code:** Phoenix AZ 85012
**Telephone:** (602) 285-0100
**Email Address:** anne@robbinsandcurtin.com
**Lawyer's Bar Number:** 010871

**Representing** ☐ Self, without a Lawyer  or  ☒ Attorney for  ☒ Plaintiff   OR  ☐ Defendant

# SUPERIOR COURT OF ARIZONA
# IN MARICOPA COUNTY

Jennifer Power et al.,

**Name of Plaintiff**

**Case No.:** CV2018-008861

And

## SUMMONS

State of Arizona and Corizon et al

**Name of Defendant**

---

**WARNING: This is an official document from the court that affects your rights. Read this carefully. If you do not understand it, contact a lawyer for help.**

---

**FROM THE STATE OF ARIZONA TO:** Corizon Health Inc.

**Name of Defendant**

1.  **A lawsuit has been filed against you. A copy of the lawsuit and other court papers are served on you with this *"Summons"*.**

2.  **If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court, and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint. To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to the:**

    •   **Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona 85003-2205 OR**
    •   **Office of the Clerk of the Superior Court, 18380 North 40th Street, Phoenix, Arizona 85032 OR**
    •   **Office of the Clerk of Superior Court, 222 East Javelina Avenue, Mesa, Arizona 85210-6201 OR**
    •   **Office of the Clerk of Superior Court, 14264 West Tierra Buena Lane, Surprise, Arizona, 85374.**

    **Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons.**

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

CV11f -092917

Case Number: _____

3. If this *"Summons"* and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your *"Response"* or *"Answer"* must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this *"Summons"* and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4. You can get a copy of the court papers filed in this case from the Petitioner at the address listed at the top of the preceding page, from the Clerk of the Superior Court's Customer Service Center at:

- 601 West Jackson, Phoenix, Arizona 85003
- 18380 North 40th Street, Phoenix, Arizona 85032
- 222 East Javelina Avenue, Mesa, Arizona 85210
- 14264 West Tierra Buena Lane, Surprise, Arizona, 85374.

5. Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least ten (10) judicial days before your scheduled court date.

6. Requests for an interpreter for persons with limited English proficiency must be made to the office of the judge or commissioner assigned to the case at least ten (10) judicial days in advance of your scheduled court date.

SIGNED AND SEALED this date     JUN 14 2018     CHRIS DEROSE, CLERK

MICHAEL JEANES, CLERK OF COURT

By_____

Deputy Clerk

A. Hatch



If you would like legal advice from a lawyer,
contact the Lawyer Referral Service at
602-257-4434
or
www.maricopalawyers.org
Sponsored by the
Maricopa County Bar Association

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

Page 2 of 2

CV11f -092917

8/23/18
1 09
pm

**Person Filing:** Anne E. Findling
**Address (if not protected):** 301 East Bethany Home Road #B-100
**City, State, Zip Code:** Phoenix AZ 85012
**Telephone:** (602) 285-0100
**Email Address:** anne@robbinsandcurtin.com
**Lawyer's Bar Number:** 010871

**Representing** ☐ Self, without a Lawyer  or  ☒ Attorney for  ☒ Plaintiff   OR  ☐ Defendant

# SUPERIOR COURT OF ARIZONA
## IN MARICOPA COUNTY

Jennifer Power et al.,

**Name of Plaintiff**

And

State of Arizona and Corizon et al

**Name of Defendant**

**Case No.:** CV 2018-008861

**SUMMONS**

If you want legal advice from a lawyer,
contact the Lawyer Referral Service at
602-257-4434
or
www.maricopalawyers.org
Sponsored by the
Maricopa County Bar Association

**WARNING: This is an official document from the court that affects your rights. Read this carefully.**
**If you do not understand it, contact a lawyer for help.**

**FROM THE STATE OF ARIZONA TO:** Corizon LLC
Name of Defendant

1. **A lawsuit has been filed against you.** A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2. If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court, and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint. To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to the:

   - **Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona 85003-2205 OR**
   - **Office of the Clerk of the Superior Court, 18380 North 40th Street, Phoenix, Arizona 85032** *OR*
   - **Office of the Clerk of Superior Court,  222 East Javelina Avenue, Mesa, Arizona  85210-6201** *OR*
   - **Office of the Clerk of Superior Court, 14264 West Tierra Buena Lane, Surprise, Arizona, 85374.**

   **Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons.**

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

Page 1 of 2

CV11f-092917

Case Number: _____

3. If this *"Summons"* and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your *"Response"* or *"Answer"* must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this *"Summons"* and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4. You can get a copy of the court papers filed in this case from the Petitioner at the address listed at the top of the preceding page, from the Clerk of the Superior Court's Customer Service Center, at:

   - 601 West Jackson, Phoenix, Arizona 85003
   - 18380 North 40th Street, Phoenix, Arizona 85032
   - 222 East Javelina Avenue, Mesa, Arizona 85210
   - 14264 West Tierra Buena Lane, Surprise, Arizona, 85374.

5. Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least ten (10) judicial days before your scheduled court date.

6. Requests for an interpreter for persons with limited English proficiency must be made to the office of the judge or commissioner assigned to the case at least ten (10) judicial days in advance of your scheduled court date.

SIGNED AND SEALED this date COPY

MICHAEL JEANES, CLERK OF COURT

JUN 1 8 2018

CHRIS DEROSE, CLERK
J. OLSON
DEPUTY CLERK

By: _____

Deputy Clerk

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

CV11f -092917

*8/23/18*
*109*
*p*

Person Filing: Anne E. Findling
Address (if not protected): 301 East Bethany Home Road #B-100
City, State, Zip Code: Phoemix AZ 85012
Telephone: (602) 285-0100
Email Address: anne@robbinsandcurtin.com
Lawyer's Bar Number: 010871

Representing ☐ Self, without a Lawyer . or ☒ Attorney for ☒ Plaintiff    OR ☐ Defendant

# SUPERIOR COURT OF ARIZONA
# IN MARICOPA COUNTY

CV 2018-008661

Jennifer Power et al.,                                 **Case No.:** _____

Name of Plaintiff

And                                                    ## SUMMONS
                                                       If you would like legal advice from a lawyer,
                                                       contact the Lawyer Referral Service at
State of Arizona and Corizon et al                            602-257-4434
Name of Defendant                                                  or
                                                       www.maricopalawyers.org
                                                       Sponsored by the

**WARNING: This is an official document from the court that affects your rights. Read this carefully.
If you do not understand it, contact a lawyer for help.**

**FROM THE STATE OF ARIZONA TO:** Corizon, Inc.
                                  Name of Defendant

1.  **A lawsuit has been filed against you.** A copy of the lawsuit and other court papers are served on you
    with this *"Summons"*.

2.  If you do not want a judgment or order taken against you without your input, you must file an *"Answer"*
    or a *"Response"* in writing with the court, and pay the filing fee. If you do not file an *"Answer"* or
    *"Response"* the other party may be given the relief requested in his/her Petition or Complaint. To
    file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to the:

    - **Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona 85003-2205
      OR**
    - **Office of the Clerk of the Superior Court, 18380 North 40th Street, Phoenix, Arizona 85032 OR**
    - **Office of the Clerk of Superior Court, 222 East Javelina Avenue, Mesa, Arizona 85210-6201 OR**
    - **Office of the Clerk of Superior Court, 14264 West Tierra Buena Lane, Surprise, Arizona, 85374.**

    **Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this
    Summons.**

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED                    CV11f-092917

Case Number: _____

3. If this *"Summons"* and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your *"Response"* or *"Answer"* must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this *"Summons"* and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4. You can get a copy of the court papers filed in this case from the Petitioner at the address listed at the top of the preceding page, from the Clerk of the Superior Court's Customer Service Center at:

   - 601 West Jackson, Phoenix, Arizona 85003
   - 18380 North 40th Street, Phoenix, Arizona 85032
   - 222 East Javelina Avenue, Mesa, Arizona 85210
   - 14264 West Tierra Buena Lane, Surprise, Arizona, 85374.

5. Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least ten (10) judicial days before your scheduled court date.

6. Requests for an interpreter for persons with limited English proficiency must be made to the office of the judge or commissioner assigned to the case at least ten (10) judicial days in advance of your scheduled court date.

**SIGNED AND SEALED this date**



MICHAEL JEANES, CLERK OF COURT

JUN 1 8 2018

CHRIS DEROSE, CLERK

By _____          J. OLSON

**Deputy Clerk**          DEPUTY CLERK

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

CV11f-092917

**ORIGINAL**

CHRIS DEROSE, CLERK
BY _____ DEP
_____ J. Olson _____

J. OLSON, FILED

18 AUG 27 PM 2: 47

Person Filing: Anne E. Findling
Address (if not protected): 301 East Bethany Home Road #B-100
City, State, Zip Code: Phoemix AZ 85012
Telephone: (602) 285-0100
Email Address: anne@robbinsandcurtin.com
Lawyer's Bar Number: 010871

Representing ☐ Self, without a Lawyer  or  ☒ Attorney for  ☒ Plaintiff  OR  ☐ Defendant

# SUPERIOR COURT OF ARIZONA
# IN MARICOPA COUNTY

Jennifer Power et al., _____

Name of Plaintiff

And

State of Arizona and Corizon et al

Name of Defendant

Case No.: **CV2018-008861**

## SUMMONS

---

> **WARNING: This is an official document from the court that affects your rights.  Read this carefully.
> If you do not understand it, contact a lawyer for help.**

---

**FROM THE STATE OF ARIZONA TO:** State of Arizona

Name of Defendant

1. **A lawsuit has been filed against you.  A copy of the lawsuit and other court papers are served on you with this *"Summons"*.**

2. **If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court, and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint.  To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to the:**

   - **Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona 85003-2205 *OR***
   - **Office of the Clerk of the Superior Court, 18380 North 40th Street, Phoenix, Arizona 85032 *OR***
   - **Office of the Clerk of Superior Court, 222 East Javelina Avenue, Mesa, Arizona 85210-6201 *OR***
   - **Office of the Clerk of Superior Court, 14264 West Tierra Buena Lane, Surprise, Arizona, 85374.**

   **Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons.**

Case Number: _____

3. If this *"Summons"* and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your *"Response"* or *"Answer"* must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this *"Summons"* and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4. You can get a copy of the court papers filed in this case from the Petitioner at the address listed at the top of the preceding page, from the Clerk of the Superior Court's Customer Service Center at:

   * 601 West Jackson, Phoenix, Arizona 85003
   * 18380 North 40th Street, Phoenix, Arizona 85032
   * 222 East Javelina Avenue, Mesa, Arizona 85210
   * 14264 West Tierra Buena Lane, Surprise, Arizona, 85374.

5. Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least ten (10) judicial days before your scheduled court date.

6. Requests for an interpreter for persons with limited English proficiency must be made to the office of the judge or commissioner assigned to the case at least ten (10) judicial days in advance of your scheduled court date.

CHRIS DEROSE, CLERK

SIGNED AND SEALED this date

JUN 14 2018  MICHAEL JEANES, CLERK OF COURT

By _____
                    Deputy Clerk



A. Hatch

If you would like legal advice from a lawyer, contact the Lawyer Referral Service at 602-257-4434 or www.maricopalawyers.org Sponsored by the Maricopa County Bar Association

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

Page 2 of 2

CV11f -092917

CHRIS DEROSE, CLERK
BY _____ DEP
_____ Olson

J. OLSON, FILED

18 AUG 27 PM 2:48

RICKIE MCTHENY
JBN LEGAL SUPPORT SERVICE, L.L.C.
8910 NORTH CENTRAL AVE
Phoenix, AZ 85020
623-229-9291

## MARICOPA COUNTY SUPERIOR COURT

| | |
|---|---|
| JENNIFER POWER, et al<br>PLAINTIFF<br>And<br>S<br>STATE OF ARIZONA; CORIZIN LLC, et al<br>DEFENDENT | Case no. CV2018-008861<br><br>CERTIFICATE OF SERVICE<br>BY A PRIVATE PERSON<br>Arizona Rules of Court 80(1) |

Type of Document(s)     SUMMONS; COMPLAINT; CERTIFICATE OF ARBITRATION; DEMAND FOR
JURY TRIAL; CERTIFICATE OF NOTICE OF INTENT TO PROVIDE EXPERT
TESTIMONY PURSUANT TO ARS 12-2602(A)

I personally served true copies of the above listed documents on the person listed below.

ENTITY SERVED:     CORIZON, INC., c/o CT CORPORATION SYSTEM, STATUTORY AGENT
HOW SERVED:       PERSONALLY ON SCOTT WHALEY accepting service as CLERK
AT:               3800 N. CENTRAL AVE., SUITE 460, PHOENIX, AZ
ON:               AUGUST 23, 2018
TIME:             1:09 PM

The undersigned certifies under penalty of perjury that I am fully qualified under 4(d), 4(c), and 45(d) to serve
process in this action within the state of Arizona; having been so appointed and registered by the Superior Court of
Maricopa County, Arizona, and that the above is true and accurate.

DECLARANT:        _____
                  RICKIE MCTHENY
                  d.b.a. JBN Legal Support Service, L.L.C.
                  AUGUST 26, 2018

CHARGE:
DOC FEE:          $ 20.00
MILEAGE:          $  4.00(1/3)
ISSUE/PICK UP:    $  3.00
CERT:             $  5.00
TOTAL:            $ 32.00
JR

CHRIS DEROSE, CLERK
BY _Of. Olson_ DEP

J. OLSON, FILED

18 AUG 27 PM 3: 10

RICKIE MCTHENY
JBN LEGAL SUPPORT SERVICE, L.L.C.
8910 NORTH CENTRAL AVE
Phoenix, AZ 85020
623-229-9291

## MARICOPA COUNTY SUPERIOR COURT

| | |
|---|---|
| JENNIFER POWER, et al | Case no. CV2018-008861 |
|         PLAINTIFF | |
| And | CERTIFICATE OF SERVICE |
| | BY A PRIVATE PERSON |
| S | Arizona Rules of Court 80(1) |
| STATE OF ARIZONA; CORIZIN LLC, et al | |
|         DEFENDENT | |

Type of Document(s)   SUMMONS; COMPLAINT; CERTIFICATE OF ARBITRATION; DEMAND FOR
JURY TRIAL; CERTIFICATE OF NOTICE OF INTENT TO PROVIDE EXPERT
TESTIMONY PURSUANT TO ARS 12-2602(A)

I personally served true copies of the above listed documents on the person listed below.

ENTITY SERVED:   CORIZON HEALTH INC., c/o CT CORPORATION SYSTEM, STATUTORY AGENT
HOW SERVED:   PERSONALLY ON SCOTT WHALEY accepting service as CLERK
AT:   3800 N. CENTRAL AVE., SUITE 460, PHOENIX, AZ
ON:   AUGUST 23, 2018
TIME:   1:09 PM

The undersigned certifies under penalty of perjury that I am fully qualified under 4(d), 4(c), and 45(d) to serve
process in this action within the state of Arizona; having been so appointed and registered by the Superior Court of
Maricopa County, Arizona, and that the above is true and accurate.

DECLARANT:   _Rickie McThey_
RICKIE MCTHENY
d.b.a. JBN Legal Support Service, L.L.C.
AUGUST 26, 2018

CHARGE:
DOC FEE:   $ 20.00
MILEAGE:   $  4.00(1/3)
ISSUE/PICK UP:   $  3.00
CERT:   $  5.00
TOTAL:   $ 32.00
JR

CHRIS DEROSE, CLERK

BY _J. Olson_

J. OLSON, FILED

18 AUG 27 PM 2: 48

RICKIE MCTHENY
JBN LEGAL SUPPORT SERVICE, L.L.C.
8910 NORTH CENTRAL AVE
Phoenix, AZ 85020
623-229-9291

## MARICOPA COUNTY SUPERIOR COURT

| | |
|---|---|
| JENNIFER POWER, et al<br>　　　　　PLAINTIFF<br>And<br><br>S<br>STATE OF ARIZONA; CORIZIN LLC, et al<br>　　　　　DEFENDENT | Case no. CV2018-008861<br><br>CERTIFICATE OF SERVICE<br>BY A PRIVATE PERSON<br>Arizona Rules of Court 80(1) |

Type of Document(s)　　SUMMONS; COMPLAINT; CERTIFICATE OF ARBITRATION; DEMAND FOR
JURY TRIAL; CERTIFICATE OF NOTICE OF INTENT TO PROVIDE EXPERT
TESTIMONY PURSUANT TO ARS 12-2602(A)

I personally served true copies of the above listed documents on the person listed below.

ENTITY SERVED:　　CORIZON, LLC., c/o CT CORPORATION SYSTEM, STATUTORY AGENT
HOW SERVED:　　　PERSONALLY ON SCOTT WHALEY accepting service as CLERK
AT:　　　　　　　　3800 N. CENTRAL AVE., SUITE 460, PHOENIX, AZ
ON:　　　　　　　　AUGUST 23, 2018
TIME:　　　　　　　1:09 PM

The undersigned certifies under penalty of perjury that I am fully qualified under 4(d), 4(c), and 45(d) to serve
process in this action within the state of Arizona; having been so appointed and registered by the Superior Court of
Maricopa County, Arizona, and that the above is true and accurate.

DECLARANT:　　　_Rickie McthH_

RICKIE MCTHENY
d.b.a. JBN Legal Support Service, L.L.C.
AUGUST 26, 2018

CHARGE:
DOC FEE:　　　　$ 20.00
MILEAGE:　　　　$  4.00(1/3)
ISSUE/PICK UP:　$  3.00
CERT:　　　　　　$  5.00
TOTAL:　　　　　$ 32.00
JR

CHRIS DEROSE, CLERK
BY _____ DEP

J. OLSON, FILED

18 AUG 27 PM 2: 47

RICKIE MCTHENY
JBN LEGAL SUPPORT SERVICE, L.L.C.
8910 NORTH CENTRAL AVE
Phoenix, AZ 85020
623-229-9291

## MARICOPA COUNTY SUPERIOR COURT

| | |
|---|---|
| JENNIFER POWER, et al<br>**PLAINTIFF**<br><br>And<br><br>S<br>STATE OF ARIZONA; CORIZIN LLC, et al<br>**DEFENDENT** | Case no. CV2018-008861<br><br>CERTIFICATE OF SERVICE<br>BY A PRIVATE PERSON<br>Arizona Rules of Court 80(1) |

Type of Document(s)    SUMMONS; COMPLAINT; CERTIFICATE OF ARBITRATION; DEMAND FOR
JURY TRIAL; CERTIFICATE OF NOTICE OF INTENT TO PROVIDE EXPERT
TESTIMONY PURSUANT TO ARS 12-2602(A)

I personally served true copies of the above listed documents on the person listed below.

ENTITY SERVED:        STATE OF ARIZONA, ARIZONA ATTORNEY GENERAL OFFICE
HOW SERVED:          PERSONALLY ON LISA FISCHER accepting service as RECEPTION
AT:                  2005 N. CENTRAL AVE., PHOENIX, AZ
ON:                  AUGUST 23, 2018
TIME:                1:20 PM

The undersigned certifies under penalty of perjury that I am fully qualified under 4(d), 4(c), and 45(d) to serve
process in this action within the state of Arizona; having been so appointed and registered by the Superior Court of
Maricopa County, Arizona, and that the above is true and accurate.

DECLARANT: 
RICKIE MCTHENY
d.b.a. JBN Legal Support Service, L.L.C.
AUGUST 26, 2018

CHARGE:
DOC FEE:          $ 20.00
MILEAGE:          $ 12.00
ISSUE/PICK UP:    $  3.00
CERT:             $  5.00
TOTAL:            $ 40.00
JR



COPY

1  Joel B. Robbins (011065)
   Anne E. Findling (010871)
2  ROBBINS & CURTIN, P.L.L.C.
3  301 E. Bethany Home Road, Suite B-100
   Phoenix, Arizona 85012-0001
4  Telephone: (602) 285-0100
5  Facsimile: (602) 265-0267
   joel@robbinsandcurtin.com
6  anne@robbinsandcurtin.com

7  *Attorneys for Plaintiff*

8          **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

9               **IN AND FOR THE COUNTY OF MARICOPA**

10

11  JENNIFER POWER, individually and
    on behalf of the statutory beneficiaries of
12  MONNIE WASHBURN, Deceased,
13                                              No.  CV 2018-008861
               Plaintiff,
14                                              DEMAND FOR JURY TRIAL

15      vs.

16  STATE OF ARIZONA, a governmental
    entity; CORIZON HEALTH, INC., a
17  Missouri corporation, doing business in
    the State of Arizona; CORIZON, INC., a
18  Missouri corporation, doing business in
    the State of Arizona; CORIZON, LLC, a
19  foreign limited liability company,
20
21              Defendants.

22

23

24
        Plaintiff respectfully requests a trial by jury on all issues in this matter triable to
25  a jury.
26      ///
27      ///
28

JUN 1 4 2018

CHRIS DEROSE, CLERK
A. HATCH
DEPUTY CLERK

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

1

2  RESPECTFULLY SUBMITTED: June 14, 2018.

3                           ROBBINS & CURTIN, p.l.l.c.

4

5                           By: _Anne E. Findling_

6                               Anne E. Findling
                                301 E. Bethany Home Road, Suite B-100
7                               Phoenix, Arizona 85012
                                *Attorney for Plaintiffs*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267





JUN 1 4 2018

CHRIS DEROSE, CLERK
A. HATCH
DEPUTY CLERK

1  Joel B. Robbins (011065)
2  Anne E. Findling (010871)
   ROBBINS & CURTIN, P.L.L.C.
3  301 E. Bethany Home Road, Suite B-100
   Phoenix, Arizona 85012-0001
4  Telephone: (602) 285-0100
5  Facsimile: (602) 265-0267
   joel@robbinsandcurtin.com
6  anne@robbinsandcurtin.com

7  *Attorneys for Plaintiff*

8

9

10          **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

11             **IN AND FOR THE COUNTY OF MARICOPA**

12

13

14  JENNIFER POWER, individually and      No.    CV 2018-008861
    on behalf of the statutory beneficiaries of
15  MONNIE WASHBURN, Deceased,
                                          CERTIFICATE REGARDING
16            Plaintiff,                  COMPULSORY ARBITRATION

17      vs.

18
    STATE OF ARIZONA, a governmental
19  entity; CORIZON HEALTH, INC., a
20  Missouri corporation, doing business in
    the State of Arizona; CORIZON, INC., a
21  Missouri corporation, doing business in
    the State of Arizona; CORIZON, LLC, a
22  foreign limited liability company,

23            Defendants.

24

25

26      The undersigned certifies that the largest award sought by the complainant,

27  including punitive damages, but excluding interest, attorney's fees, and costs, exceeds the

28

1    limits set by Local Rule for compulsory arbitration. Therefore, this case is not subject to

2    compulsory arbitration as provided in Rules 72 through 77 of the Rules of Civil Procedure.

3         RESPECTFULLY SUBMITTED: June 14, 2018.

4                                  **ROBBINS & CURTIN, p.l.l.c.**

5

6                            By:  _Anne E Findling_

7                                 Anne E. Findling
                                  301 E. Bethany Home Road, Suite B-100
8                                 Phoenix, Arizona 85012
                                  *Attorney for Plaintiffs*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707  ♦  Fax: (602) 265-0267

1  Mandi J. Karvis/Bar No. 021858
2  Anngelica N. Davis/Bar No. 033261
   **WICKER SMITH O'HARA McCOY & FORD, P.A.**
3  One N. Central Ave., Suite 885
   Phoenix, AZ   85004
4

5  Firm E-mail:  PHXCrtPleadings@wickersmith.com

6
   Mandi J. Karvis
7    Direct Phone: (602) 648-2240
     Fax: (602) 812-4986
8    E-mail:  MKarvis@wickersmith.com

9
   Anngelica N. Davis
10   Direct Phone: (602) 648-2240
     Fax: (602) 812-4986
11   E-mail:  ADavis@wickersmith.com

12
13 Attorneys for Defendants

14           **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
15               **IN AND FOR THE COUNTY OF MARICOPA**

16 JENNIFER POWER, individually and on          Case No.:  CV2018-008861
17 behalf of the statutory beneficiaries of
   MONNIE WASHBURN, Deceased,                    **ANSWER TO PLAINTIFF'S**
18                                               **COMPLAINT ON BEHALF OF**
                                                 **DEFENDANTS CORIZON HEALTH,**
19          Plaintiff,                           **INC., CORIZON INC., CORIZON,**
                                                 **LLC, AND STATE OF ARIZONA**
20 v.

21
   STATE OF ARIZONA, a governmental
22 entity; CORIZON HEALTH, INC., a               *(Assigned to Honorable Hugh Hegyi)*
   Missouri corporation, doing business in the
23 State of Arizona; CORIZON, INC., a
   Missouri corporation, doing business in the
24 State of Arizona; CORIZON, LLC, a foreign
   limited liability company,
25
26          Defendants.
27

28

Defendants State of Arizona, Corizon Health, Inc., Corizon, Inc., and Corizon, LLC (hereinafter jointly referred to as "Answering Defendants" and independently, respectively referred to as "Arizona" and "Corizon") by and through counsel undersigned, and for their Answer to Plaintiff's Complaint hereby admit, deny, and allege as follows.  It should be noted that regarding Defendant State of Arizona undersigned counsel is representing its interest only as to the medical claims alleged and not those pertaining to the alleged actions or inactions of the transport officers.

## **PARTIES**

1.     Answering Paragraphs 1 and 2 of the Complaint, Answering Defendants state that Plaintiff's Complaint speaks for itself relative to the claims that Plaintiff asserts; therefore, no response is necessary.

2.     Answering Paragraph 3 of the Complaint, Answering Defendants admit that Mr. Washburn died on June 20, 2017, while incarcerated within the Arizona Department of Corrections.  Answering Defendants admit to the appropriateness of jurisdiction and venue the allegations are admitted.  To the extent the allegations are attempting to establish anything other than the appropriateness of jurisdiction and venue, the allegations are denied.

3.      Answering Paragraphs 4 and 5 of the Complaint, Answering Defendants admit the allegations contained therein.

4.     Answering Paragraph 6 of the Complaint, Answering Defendants admit that the State of Arizona has a duty to provide health care services to inmates.  The remaining allegations pertain to non-medical allegations and do not pertain to Corizon so no response is being provided.  To the extent the allegations are deemed to pertain to Answering Defendants, the allegations are denied.

5.     Answering Paragraph 7 of the Complaint, Answering Defendants aver that the statute speaks for itself, therefore no response is necessary.  To the extent the allegations are deemed pertinent to Answering Defendants they are denied.

6.     Answering Paragraphs 8 and 9 of the Complaint, Answering Defendants admit to the appropriateness of jurisdiction and venue the allegations are admitted.  To the extent the

allegations are attempting to establish anything other than the appropriateness of jurisdiction and venue, the allegations are denied.

7.      Answering Paragraph 10 of the Complaint, Answering Defendants admit that at the time of the events in question, there was a contract between the State of Arizona and Corizon for Corizon to provide medical services to inmates housed at various State run prisons.  Answering Defendants aver that Defendant Corizon was not responsible for providing health care services to inmates, including Mr. Washburn, who were housed at ASP-Kingman.

8.      Answering Paragraphs 11 and 12 of the Complaint, Answering Defendants admit the allegations contained therein.

9.      Answering Paragraph 13 of the Complaint, Answering Defendants admit only the appropriateness of jurisdiction and venue.  To the extent the allegations of said paragraph are intended to establish anything other than the appropriateness of jurisdiction and venue, the allegations are denied.

## JURISDICTION AND VENUE

10.     Answering Paragraphs 14 through 16 of the Complaint, Answering Defendants admit the appropriateness of jurisdiction and venue.  To the extent the allegations of said paragraphs were intended to establish anything other than the appropriateness of jurisdiction and venue, the allegations are denied.

## FACTUAL BACKGROUND

11.     Answering Paragraph 17 of the Complaint, Answering Defendants admit the allegations contained therein.

12.     Answering Paragraph 18 of the Complaint, Arizona denies the allegations contained therein and avers that Mr. Washburn was serving a term of incarceration within the ADOC at various locations, including but not limited to the ASP-Kingman facility.  Answering Defendants are without specific information as to the maximum end date of his sentence, as such the remaining allegations are denied.

### Medications

13.     Answering Paragraph 19 of the Complaint, Answering Defendants deny the

allegations contained therein as Defendant Corizon was not the contracted provided of medical services at ASP-Kingman. Answering Defendants aver that Correct Care Solutions was responsible for the health care needs of inmates at ASP-Kingman, including Mr. Washburn. As such, Answering Defendants deny the allegations contained in said paragraph.

14.     Answering Paragraphs 20 through 23 of the Complaint, Answering Defendants are without sufficient information as to respond to the allegations of said paragraphs as to what the labeling of the medications that Mr. Washburn was prescribed by Correct Care Solutions say about the possible risks of heat exposure. As such, the allegations of said paragraphs are denied.

15.     Answering Paragraph 24 of the Complaint, Answering Defendants deny the allegations contained therein and cannot speak to what a reasonable and prudent practitioner who prescribes those medications would know in terms of risks as that calls for expert testimony and a legal conclusion. As indicated above, Answering Defendants did not prescribe any of the medications in question.

**Transport**

16.     Paragraphs 25 through 29, and 31, Answering Defendants provide no response to the allegations of said paragraphs because they do not pertain to the provision of medical services. To the extent the allegations of said paragraphs are deemed to pertain to Answering Defendants, the allegations are denied due to a lack of information and belief.

17.     Answering Paragraph 30 of the Complaint, Answering Defendants admit that Corizon employee, Nidia Salazar, LPN, spoke with someone about Mr. Washburn's condition during his transport from ASP-Kingman to ASPC-Tucson. Nurse Salazar documented that she was told that Mr. Washburn was vomiting and appeared to be severely dehydrated. Nurse Salazar documented that she spoke with the on call supervisor, Thayer, and also spoke with NP Easley and received a verbal order to transfer Mr. Washburn to IPC observation upon arrival. Answering Defendants deny the remaining allegations of said paragraph.

18.     Answering Paragraph 32 of the Complaint, Answering Defendants admit that Corizon medical personnel, including Nurse Salazar, Nurse Redwine, and Nurse Rodriguez, were waiting at the sally port when the transport bus arrived at ASPC-Tucson. Answering Defendants

further admit that the Tucson Fire Department had been contacted to respond to the prison. Answering Defendants further admit that when Mr. Washburn was removed from the transport bus, he was unresponsive and that his pupils were fixed and no pulse were palpable.  Answering Defendants further admit that CPR was administered and continued until the Tucson Fire Department paramedics arrived and took over the care.  Answering Defendants aver that the Tucson Fire Department called the code and pronounced Mr. Washburn dead at approximately 1958.

19.    Answering Paragraph 33 of the Complaint, Answering Defendants are without sufficient information to formulate a response to the allegations of said paragraph and as such they are denied.

**CLAIMS FOR RELIEF**
**COUNT ONE**
**NEGLIGENCE**
**(State of Arizona / Corizon)**

20.    Answering Paragraph 34 of the Complaint, Answering Defendants incorporate their response to each allegation corresponding to each identified paragraph.

21.    Answering Paragraphs 35 and 36 of the Complaint, Answering Defendants admit that the State of Arizona has a duty to provide medical services to inmates housed in State run prisons in the State.  Answering Defendant Corizon avers that they were not responsible for providing or prescribing any such medications to Mr. Washburn, as they were not the contracted medical provider at ASP-Kingman.  As such, the remaining allegations of said paragraphs are denied.

22.    Answering Paragraphs 37 and 38, Answering Defendants admit that Defendant Corizon had a duty to provide medical care to inmates in a manner that complied with the applicable standard of care.  Answering Defendants aver that Defendant Corizon owed no such duty to Mr. Washburn prior to his arrival at ASPC-Tucson because they were not responsible for his health care at ASP-Kingman.

23.    Answering Paragraphs 39 and 40, Answering Defendants provide no response as those allegations do not pertain to the provision of medical services.  To the extent the allegations of said paragraphs are deemed to pertain to Answering Defendants, they are denied.

24.     Answering Paragraph 41 of the Complaint, Answering Defendants deny the allegations contained therein because Defendant Corizon was not responsible for Mr. Washburn's medical care at ASP-Kingman and did not prescribe any of the medications in question. Answering Defendants aver that upon Mr. Washburn's arrival to ASPC-Tucson, that Corizon medical personnel were ready and available to provide medical services to Mr. Washburn, but that when he was removed from the transport bus, he was already unresponsive with fixed pupils and no palpable pulses.  Despite the fact that Mr. Washburn appeared to already be deceased, Corizon medical personnel performed CPR until the arrival of the Tucson Fire Department paramedics arrived and took over the care.

25.     Answering Paragraphs 42 and 43 of the Complaint, Answering Defendants deny the allegations contained therein and specifically deny that their actions caused or contributed to causing the death of Mr. Washburn.

**COUNT TWO**
**MEDICAL NEGLIGENCE**
**(Corizon)**

26.     Answering Paragraph 44 of the Complaint, Answering Defendants incorporate their response to each allegation corresponding to each identified paragraph.

27.     Answering Paragraphs 45 and 46 of Complaint, Answering Defendants deny the allegations of said paragraphs because Defendant Corizon was not responsible for Mr. Washburn's health care at ASP-Kingman and did not prescribe any of the medications in question. As such, they could not be responsible for providing any information to the transport officers about the possible effects of heat on Mr. Washburn during his transport to ASPC-Tucson. Answering Defendants aver that Correct Care Solutions was responsible for the provision of health care services to Mr. Washburn at ASP-Kingman.

28.     Answering Paragraph 48 of the Complaint, Answering Defendants deny the allegations contained therein and aver that they were provided with very limited information about Mr. Washburn's medical situation during the transport, other than that he was vomiting and appeared to be severely dehydrated.  Answering Defendants are not responsible for the alleged actions or inactions of the transport officers during the transport of Mr. Washburn from ASP-

Kingman to ASPC-Tucson.

29.     Answering Paragraph 48 of the Complaint, Answering Defendants admit that they had a duty to provide medical services to inmates in State run prisons at the time of the events in question and that such medical services should be provided in accordance with the standard of care and what would be expected by a reasonable and prudent provider of correctional health care services under same or similar circumstances.   Answering Defendants aver that Defendant Corizon was not responsible for Mr. Washburn's medical care at ASP-Kingman, and further aver that Correct Care Solutions was responsible for the provision of those services.   As such, the remaining allegations of said paragraph are denied.

30.     Answering Paragraphs 49 and 50 of the Complaint, Answering Defendants deny the allegations contained therein.  Answering Defendants specifically deny causing or contributing to causing the death of Mr. Washburn.

**COUNT THREE**
**(All Defendants)**

31.     Answering Paragraphs 51 through 53, Answering Defendants deny all allegations contained therein.  Answering Defendants specifically deny causing or contributing to causing the death of Mr. Washburn.

**<u>AFFIRMATIVE DEFENSES</u>**

1.     Answering Defendants deny each and every allegation not specifically herein admitted, denied, or qualified.

2.     Plaintiff's Complaint fails to state a cause of action upon which relief can be granted as against Answering Defendants.

3.     Plaintiff failed to join a party under Rule 19 *Arizona Rules of Civil Procedure*.

4.     Answering Defendants did not cause or contribute to causing – whether by action or inaction any of the injuries/damages alleged by Plaintiff.

5.     Plaintiff's Complaint damages, if any, were caused by an intervening cause or a superseding cause for which Answering Defendants are not responsible.

6.     Answering Defendants complied with all legal duties owed.

7.     Plaintiff's alleged injuries or damages may have been caused, or contributed to, by

the fault of other party of non-party persons or entities, as such, the Answering Defendant reserves the right to eek an allegation of fault against such individuals or entities pursuant to A.R.S. § 12-2506 *et seq.*

8.    The injuries and damages for which compensation is sought were caused or contributed to by a failure to undertake reasonable measures to mitigate said injuries and damages. The failure to mitigate damages should be imputed to any plaintiff and beneficiary, if any, and reduce or bar any recovery sought.

9.    The injuries or damages for which compensation is sought were directly and proximately caused or contribute to by risks that were well, truly, and actually known, and that were knowingly and voluntarily accepted and assumed.  The assumption of the risk should be imputed to any plaintiff or beneficiary, if any and act to reduce or bar recovery herein sought.

10.    Answering Defendants allege that at all relevant times, they acted in good faith, and did not violate Mr. Washburn's clearly established statutory or common law rights, of which a reasonable person would have known.

11.    Answering Defendants affirmatively allege that at all relevant times, they acted professionally and pursuant to legitimate penological interests, and in compliance with all statutory, regulatory, common law, and constitutional requirements.

12.    Answering Defendants affirmatively allege the damages claimed by Plaintiff were not causally connected to the alleged actions or inactions of Answering Defendants.

13.    Answering Defendants affirmatively allege that the Complaint fails to state a claim sufficient to support Plaintiff's request for exemplary damages against them.

14.    Answering Defendants deny any conduct that would justify an award of punitive damages, and alleges that the claim for punitive damages is without justification or merit and is not supported by either the facts involved in this case of inferences reasonably drawn from the facts of this case; therefore, Answering Defendants are entitled pursuant to A.R.S. § 12-341.01 et. seq., to recover appropriate sanctions, including, but not limited to, attorney's fees incurred in defending against said claim.  In addition, Plaintiff's punitive damages claim violates the United States Constitution and the Amendments thereto, and the Arizona State Constitution.

15.    Answering Defendants affirmatively allege that they may assert the following affirmative defenses should discovery/disclosure reveal them to be applicable: all defenses listed in Rules 8(c) and 12(b) of the Arizona Rules of Civil Procedure.

**WHEREFORE**, Answering Defendants respectfully request that judgment be entered in their favor on the Complaint as follows:

a)  Dismissal of the Complaint with prejudice;

b)  Entry of judgment in favor of Answering Defendants, and that Plaintiff take nothing as a result thereof;

c)  Any and all further relief deemed just and proper by this Court.

RESPECTFULLY SUBMITTED this 3rd day of October, 2018.

WICKER SMITH O'HARA McCOY & FORD, P.A.

By: _Mandi J. Karvis_____

Mandi J. Karvis
Anngelica N. Davis
One N. Central Ave., Suite 885
Phoenix, AZ   85004
Attorneys for Defendants

Original of the foregoing electronically filed this 3rd day of October, 2018 with the **Maricopa** County Superior Court and a copy electronically provided to:

Honorable Hugh Hegyi
Maricopa County Superior Court
201 W. Jefferson St., Courtroom 714
Phoenix, AZ   85003-2243

COPY of the foregoing e-mailed this same day to:

Anne E. Findling, Esquire
Joel B. Robbins, Esquire
Robbins & Curtin, PLLC

By: _Regina Walter_

Chris DeRose, Clerk of Court
*** Electronically Filed ***
M. Cain, Deputy
10/26/2018 3:34:00 PM
Filing ID 9835544

MARK BRNOVICH
ATTORNEY GENERAL

KARA L. KLIMA (022519)
Assistant Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004-1592
Telephone: (602) 542-7641
Fax:  (602) 542-3393
DefensePhx@azag.gov
Kara.Klima@azag.gov

*Attorney for State Defendants*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| JENNIFER POWER, individually and on behalf of the statutory beneficiaries of MONNIE WASHBURN, Deceased,<br><br>                    Plaintiff,<br><br>  vs.<br><br>STATE OF ARIZONA, a governmental entity; CORIZON HEALTH, INC., a Missouri corporation, doing business in the State of Arizona; CORIZON, INC., a Missouri corporation, doing business in the State of Arizona; CORIZON, LLC, a foreign limited liability company,<br><br>                    Defendants. | Case No: CV2018-008861<br><br><br><br>**ANSWER**<br><br><br><br><br><br>(Assigned to the Hon.) |

Defendant State of Arizona (the "State"), by and through counsel undersigned, hereby admits, denies, and alleges as follows:

**PARTIES**

1.       Answering Paragraphs 1-2 of Plaintiff's Complaint, Defendant State states that the Complaint speaks for itself relative to the claims that Plaintiff asserts, and therefore, no response is necessary.

1

2.     Answering Paragraph 3 of the Complaint, Defendant State admits that Mr. Washburn was incarcerated within the Arizona Department of Corrections and that he died on June 20, 2017.  Defendant State admits that jurisdiction and venue are proper, but to the extent the allegations attempt to establish anything other jurisdiction and venue, the allegations are denied.

3.     Defendant State admits the allegations within Paragraph 4-6.

4.     Answering Paragraph 7 of the Complaint, Defendant State avers the statute speaks for itself, and therefore no response is necessary.

5.     The allegations within paragraphs 8-9 do not pertain to Defendant State, and as such, they are neither admitted nor denied.

6.     Answering Paragraph 10 of the Complaint, Defendant State admits that, on June 20, 2017, there was a contract between Defendant State and Defendant Corizon Health, Inc. to provide medical services to inmates housed at various State-run prisons, including ASPC-Tucson.

7.     Answering paragraph 11, Defendant State is without sufficient information to respond to the allegations contained therein, and as such, the allegations are denied.

8.     Answering paragraph 12, Defendant State is without sufficient information to respond to the allegations contained therein, and as such, the allegations are denied.

9.     The allegations within Paragraph 13 do not pertain to Defendant State, and, as such, they are neither admitted nor denied.  To the extent that the allegations pertain to Defendant State, they are hereby denied.

**JURISDICTION AND VENUE**

10.     Defendant State admits the allegations within Paragraphs 14-16.

**FACTUAL BACKGROUND**

11.     Defendant State admits the allegations within Paragraph 17.

12.     Answering paragraph 18, Defendant State is without sufficient information to respond to the allegations contained therein, and as such, the allegations are denied.

/ / /

2

**Medications**

13.     The allegations within Paragraph 19 pertain to Defendant Corizon, and as such, they are neither admitted nor denied.  To the extent the allegations pertain to Defendant State, they are denied.

14.     Defendant State is without sufficient information as to respond to the allegations contained within Paragraph 20-24, and accordingly, they are denied.

**Transport**

15.     Answering Paragraph 25, Defendant State admits only that on June 20, 2017, Mr. Washburn was being transferred from the State Prison Complex in Kingman to the State Prison Complex in Tucson, via an ADC bus.  Defendant State is without sufficient information to all other allegations contained within Paragraph 25, and as such, denies same.

16.     Answering Paragraph 26, Defendant State admits that Correctional Officer II Dale A. King was driving the transport van.

17.     Answering Paragraph 27, Defendant State admits that Correctional Officer II Tuccino was present in the transport van.

18.     Answering Paragraph 28, Defendant State admits that, at the relevant dates and times, Sergeant Steven Gallardo was acting in a supervisory role to COII King and COII Tuccino.

19.     Answering Paragraph 29, Defendant State admits only that, at approximately 3:00 p.m., Mr. Washburn attempted to remove his restraints; as to all other allegations contained therein, Defendant State is without sufficient information to respond, and as such, the allegations are denied.

20.     The allegations in Paragraph 30 do not pertain to Answering Defendant, and as such, Defendant State neither admits nor denies.  Insofar as any allegation may pertain to Defendant State, it is hereby denied.

21.     Defendant State is without sufficient information to all other allegations contained within Paragraph 31, and as such, denies same.

22.     Answering Paragraph 32, Defendant State admits that Corizon medical staff from the prison, including Nurses Salazar, Redwine, Rodriguez, and Keeting, were standing by in the sally port, that Tucson Fire Department paramedics were en route, that Mr. Washburn was taken off the bus, and that CPR was initiated; Defendant State further admits that Tucson Fire Department called the code, pronouncing Mr. Washburn dead at approximately 1958.  Defendant State is without sufficient information as to the remaining allegations contained within paragraph 32, and as such, they are denied.

23.     Answering Paragraph 33, Defendant State is without sufficient information to formulate a response to the allegations of said paragraph and as such they are denied.

## CLAIMS FOR RELIEF
### COUNT ONE
### NEGLIGENCE
### (State of Arizona/Corizon)

24.     Answering Paragraph 34, Defendant State incorporates their response to each allegation corresponding to each identified paragraph.

25.     Answering Paragraphs 35-36, Defendant State admits only it has duty of care to its inmates; Defendant State is without sufficient information to formulate a response to the remaining allegations of said paragraph and as such, they are denied.

26.      Answering Paragraphs 37-38, the allegations do not pertain to Defendant State, and thus they are neither admitted nor denied.  Insofar as the allegations may pertain to Defendant State, they are denied.

27.     Answering Paragraphs 39-43, Defendant State denies the allegations contained therein.

### COUNT TWO
### MEDICAL NEGLIGENCE
### (Corizon)

28.     Answering Paragraph 44, Defendant State incorporates their response to each allegation corresponding to each identified paragraph.

29.     Answering Paragraphs 45-50, the allegations do not pertain to Defendant State, and thus, they are neither admitted nor denied.  Insofar as the allegations may

pertain to Defendant State, they are denied. Defendant State avers that Mr. Washburn's medical treatment, prior to the transport, was managed at ASP-Kingman and that Correct Care Solutions provided those medical services.

### COUNT THREE
### (All Defendants)

30.     Answering Paragraphs 51-53, Defendant State denies all allegations contained therein.

31.     Defendant State denies each and every allegation not specifically herein admitted, denied, or qualified.

### AFFIRMATIVE DEFENSES

1.     Plaintiff's Complaint fails to state a claim upon which relief can be granted.

2.     The elements of liability in a negligence action are the existence of a duty, and a breach of that duty by Defendant that proximately results in injury to the Plaintiff. Defendant takes the position that there is no evidence in this case that any or all of Plaintiff's claimed injuries and damages were proximately caused by Defendant's actions or omissions.

3.     Defendant State affirmatively asserts it met the applicable standards of care, was not negligent, is not liable to Plaintiff for her damages, and owes Plaintiff nothing.

4.     The immunities and defenses provided by A.R.S. §§ 12-820.01; 12-820.02; 12-820.04; 12-820.05(A) and (B); 12-821; 12-821.01 *et seq.*

5.     The injuries and damages, if any alleged by Plaintiff were caused and proximately caused by the acts or omissions of other parties and/or non-parties at fault. *See* A.R.S. § 12-2506 *et seq.*

6.     Defendant State reserves its right to assert all defenses permitted by Arizona Rules of Civil Procedure 8(d) and 12(b).

/ / /

/ / /

/ / /

1    7.    Defendant State reserves the right to supplement affirmative defenses as

2  discovery proceeds.

3    RESPECTFULLY SUBMITTED this 26th day of October, 2018.

4

5    MARK BRNOVICH
     Attorney General

6

7    /s/Kara L. Klima

8    KARA L. KLIMA
     Assistant Attorney General

9    *Attorney for State Defendants*

10

11  ORIGINAL of the foregoing filed via
    AZTurboCourt.com and COPIES

12  E-Served this 26th day of October, 2018, to:

13

14  Joel B. Robbins
    Anne E. Findling

15  Robbins & Curtin, P.L.L.C.
    301 East Bethany Home Road, Suite B-100

16  Phoenix, Arizona 85012-0001

17  *Attorney for Plaintiff*

18  Mandi J. Karvis
    Anngelica N. Davis

19  Wicker, Smith, O'Hara, McCoy & Ford, P.A.

20  One North Central Avenue, Suite 885
    Phoenix, Arizona 85004

21  MKarvis@wickersmith.com

22  ADavis@wickersmith.com
    PHXCrtPleadings@wickersmith.com

23  *Attorneys for Defendant Corizon*

24

25  By /s/ Marie Elena Cobb
    LMS: 18-0102/RSK: G201721318/HDM#7400247

26

27

28

                            6

1  Joel B. Robbins (011065)
2  Anne E. Findling (010871)
   ROBBINS & CURTIN, P.L.L.C.
3  301 E. Bethany Home Road, Suite B-100
   Phoenix, Arizona 85012-0001
4  Telephone: (602) 285-0100
5  Facsimile: (602) 265-0267
   joel@robbinsandcurtin.com
6  anne@robbinsandcurtin.com

7  *Attorneys for Plaintiff*

8

9         **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
10
              **IN AND FOR THE COUNTY OF MARICOPA**
11

12  JENNIFER POWER, individually and
    on behalf of the statutory beneficiaries      No.  CV2018-008861
13  of MONNIE WASHBURN, Deceased;
    ESTATE OF MONNIE WASHBURN,
14
15                Plaintiff,
16                                                 **MOTION FOR LEAVE**
    vs.                                            **TO AMEND COMPLAINT**
17
18  STATE OF ARIZONA, a governmental
    entity; CORIZON HEALTH, INC., a                 (Assigned to the
19  Missouri corporation, doing business in the     Honorable Hugh Hegyi)
    State of Arizona; CORIZON, INC., a
20  Missouri corporation, doing business in the
    State of Arizona; CORIZON, LLC, a foreign
21  limited liability company,
22
23                Defendants.
24
25      Plaintiffs move this Court for leave to file their First Amended Complaint
26  (FAC), which is attached as Exhibit 1. The effect of this amendment is to add
27  additional parties and to add claims pursuant to 42 U.S.C. § 1983. A red-lined
28  version is attached as Exhibit 2. Undersigned counsel circulated a draft of the

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax:  (602) 265-0267

1   proposed First Amended Complaint on November 21, 2018 and received no
2   objections from Defendants.

3       Rule 15(a)(2) authorizes amendment with leave of the Court. The spirit of
4   the rule is to allow amendment to be "freely given when justice requires." *Id.*
5   *See also Owen v. Superior Court,*133 Ariz. 75, 79 (1982) (stating that courts
6   favor a trial on the merits). Allowing amendments is discretionary, however,
7   the courts have held that "amendment should be liberally granted unless the
8   moving party has unduly delayed in making the request, the motion is in bad
9   faith or for purposes of delay, or amendment would be futile." *See State*
10  *Compensation Fund v. Yellow Cab Co. of Phoenix,* 197 Ariz. 120, 125 (App.
11  1999).

12      This case arises out of the death of Monnie Washburn, who was
13  incarcerated within the Arizona Department of Corrections (ADC) and was
14  being transported from ASPC-Kingman to ASPC-Tucson at the time of his
15  death on June 20, 2016. Here, Plaintiffs' request for amendment is for the
16  purpose of naming additional parties as defendants: Correct Care Solutions,
17  Geo Group, Corrections Officer Dale A. King, Corrections Officer Antonio R.
18  Tuccino, and Sergeant Steven Gallardo.

19                           **CONCLUSION**
20      Plaintiffs respectfully request this Court exercise its discretion and grant
21  Plaintiffs leave to file their First Amended Complaint as attached in Exhibit 1
22  hereto.

23       DATED this January 7, 2019.

24

25  / / /

26  / / /

27  / / /

28

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax:   (602) 265-0267

ROBBINS & CURTIN, p.l.l.c.


By:   /s/ Anne E. Findling
      Joel B. Robbins
      Anne E. Findling
      301 E. Bethany Home Road, Suite B-100
      Phoenix, Arizona 85012
      *Attorneys for Plaintiff*

The foregoing electronically filed
this January 7, 2019 to:

Clerk of the Court
Maricopa County Superior Court

COPIES of the foregoing e-served/emailed this same day to:

Mandi J. Karvis
Anngelica N. Davis
WICKER SMITH O'HARA McCOY & FORD, P.A.
One N. Central Ave., Suite 885
Phoenix, AZ 85004
*Attorneys for Defendants*


By: /s/ Kimberly A. Wolf

**EXHIBIT 1**

Joel B. Robbins (011065)
Anne E. Findling (010871)
ROBBINS & CURTIN, P.L.L.C.
301 E. Bethany Home Road, Suite B-100
Phoenix, Arizona 85012-0001
Telephone: (602) 285-0100
Facsimile: (602) 265-0267
joel@robbinsandcurtin.com
anne@robbinsandcurtin.com

*Attorneys for Plaintiff*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| JENNIFER POWER, individually and on behalf of the statutory beneficiaries of MONNIE WASHBURN, Deceased; ESTATE OF MONNIE WASHBURN,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF ARIZONA, a governmental entity; CORIZON HEALTH, INC., a Missouri corporation, doing business in the State of Arizona; CORIZON, INC., a Missouri corporation, doing business in the State of Arizona; CORIZON, LLC, a foreign limited liability company, CORRECT CARE SOLUTIONS, LLC a foreign limited liability company doing business in Arizona; THE GEO GROUP, INC., a Florida Corporation doing business in Arizona; CORRECTIONS OFFICER DALE A. KING, individually; CORRECTIONS OFFICER ANTONIO R. TUCCINO, individually; SERGEANT STEVEN GALLARDO, individually; | No.  CV2018-008861<br><br><br>**FIRST AMENDED COMPLAINT**<br><br>(Wrongful Death)<br><br><br>**(Jury Trial Requested)** |

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Defendants.

Plaintiff Jennifer Power, individually and on behalf of the statutory beneficiaries of Monnie Washburn, and in her capacity as personal representative of the Estate of Monnie Washburn, deceased, for her Complaint against Defendants, allege as follows:

## PARTIES

1.     Plaintiff, Jennifer Power, is the wife of Monnie Washburn, deceased, and brings this action individually and on behalf of the statutory beneficiaries of Monnie Washburn.

2.     Jennifer Power is also the duly appointed personal representative of the Estate of Monnie Washburn, Maricopa County Superior Court No. PB2018-003467.

3.     Mr. Washburn is also survived by two children, who are statutory beneficiaries pursuant to A.R.S. § 12-612 (A).

4.     Decedent Monnie Washburn was a resident of the State of Arizona.   Although incarcerated within the Arizona Department of Corrections (ADC) at the time of his death, Mr. Washburn's residence was in Maricopa County, Arizona prior to his incarceration.   Mr. Washburn died on June 20, 2017.

5.     At the time of his death, Mr. Washburn was actively being treated

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax:   (602) 265-0267

for mental illness and was being prescribed psychotropic medications as reflected in his ADC assigned mental health score of 3M.

6. The State of Arizona is a body politic; the Arizona Department of Corrections is a department of the State of Arizona.

7. The State of Arizona has a non-delegable duty for the care and custody of inmates within the Arizona State Prison System, including providing health care services to those incarcerated in the system.

8. The State of Arizona is responsible for the actions of ADC, its medical and mental health staff, its corrections staff, and other ADC employees.

9. The State of Arizona promulgates Department Orders, General Orders, Directors Instructions, Post Orders, and other rules and regulations to ensure the safety of the community, the safety of employees of ADC, and the safety of inmates in ADC's custody (collectively "ADC Policy.")

10. The State of Arizona mandates the training, retraining, and currency training for ADC employees (collectively "ADC Training") on ADC Policy.

11. The State of Arizona protects certain aspects of ADC Policy from public disclosure.

12. Pursuant to A.R.S. § 31-201.01, any and all causes of action which may arise out of tort caused by the director, prison officers or employees of the department, within the scope of their legal duty, shall run only against the State.

13. Defendants Corizon Health, Inc., Corizon, Inc. and Corizon LLC are related, for-profit foreign business entities, who contract and conduct business within the State of Arizona. These entities will be referred to as "Corizon."

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

14. Corizon has a corporate office in Maricopa County, Arizona. Corizon also conducts business in Maricopa County and other locations within the State of Arizona.

15. Effective March 4, 2013, Defendant Corizon Health, Inc. contracted with the State of Arizona to provide full service medical, mental health, and dental care (collectively "healthcare") to the inmates housed at ASPC-Douglas, ASPC-Phoenix, ASPC-Eyman, ASPC-Safford, ASPC-Florence, ASPC-Tucson, ASPC-Lewis, ASPC-Winslow, ASPC-Perryville, ASPC-Yuma.

16. The State of Arizona retained monitoring responsibility for Defendant Corizon's provision of health care to inmates within the Arizona Department of Corrections prison system.

17. Defendant Correct Care Solutions, LLC ("Correct Care") is a foreign limited liability company doing business in the State of Arizona. Correct Care is a contracted provider for medical and mental health care to inmates housed at ASPC-Kingman.

18. Defendant GEO Group ("GEO") is a foreign for-profit corporation doing business in the State of Arizona. GEO Group contracts with the State of Arizona to operate the prison complex at ASPC-Kingman. Geo Group is responsible for the actions of its employees, contractors and agents in the scope of their engagement.

19. ADC Policy requires inmates to be provided opportunities for reasonable and appropriate access to a community standard of health care and appropriate referrals for inmates who appear for treatment.

20. ADC Policy requires corrections officers and others charged with the supervision of inmates to regularly conduct health and safety checks, and to record those checks.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

21. ADC Policy requires corrections officers to respond to medical emergencies involving inmates within three minutes. Examples of medical emergencies for which officers receive training include seizures, heat exhaustion, and heat stroke.

22. ADC Policy requires corrections officers who are transporting inmates within the state to conduct regular equipment checks of security devices and transportation vehicles.

23. ADC Policy requires corrections officers to keep accurate records of health and safety checks of inmates and to regularly report those security checks.

24. ADC Policy provides for emergency response through its Incident Command System ("ICS"). One purpose of ICS is to mobilize resources during an emergency for the safety of the community, the staff, and the inmates.

25. Defendant Corrections Officer Dale A. King ("CO King") is or was an employee of the State of Arizona as a corrections officer at the time of the events that give rise to this action.

26. Defendant Corrections Officer Antonio R. Tuccino ("CO Tuccino") is or was an employee of the State of Arizona as a corrections officer at the time of the events that give rise to this action.

27. Defendant Corrections Sergeant Steven Gallardo ("Sgt. Gallardo") is or was an employee of the State of Arizona as a corrections sergeant at the time of the events that give rise to this action.

28. Defendants King, Tuccino, and Gallardo are named individually for purposes of a federal civil rights claim pursuant to 42 U.S.C. § 1983. Defendants King, Tuccino, and Gallardo are state actors as that term is used in the jurisprudence of federal civil rights law. Defendants King, Tuccino and Gallardo acted under color of state law.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax:  (602) 265-0267

29.    Corizon, Correct Care, and Geo Group have caused events to occur in the State of Arizona and are subject to this Court's jurisdiction.

## JURISDICTION AND VENUE

30. The amount in controversy exceeds the jurisdictional threshold of the Court.

31. A timely notice of claim pursuant to A.R.S. § 12-821.01 was served on Defendant State of Arizona on December 15, 2017.  More than sixty (60) days have passed since this Notice of Claim was served upon the Defendant. By operation of statute, the claim is deemed denied.

32. This is an action against the State of Arizona. Venue is proper in the Superior Court in and for Maricopa County.

33. This Court has jurisdiction for claims made under 42 U.S.C. § 1983. A trial by jury is demanded for all claims asserted in this action.

## FACTUAL BACKGROUND

34.    At times relevant to the present dispute, Monnie Washburn was an inmate within the Arizona Department of Corrections, housed at the Arizona State Prison Complex at Kingman, Arizona (ASPC-Kingman).

35.    Monnie Washburn was serving a term of incarceration, with a maximum end date of February 15, 2019.

36.    On June 20, 2016, Mr. Washburn was being transferred from ASPC-Kingman, operated by Geo Group, to a state-run prison facility in Tucson (ASPC-Tucson).

37.    Upon information and belief, Geo Group and/or Correct Care was responsible for ensuring that Mr. Washburn's medical and/or mental health conditions were accurately and timely reported in anticipation of the transfer from ASPC-Kingman to ASPC-Tucson.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

## Medications

38.     Corizon and/or Correct Care prescribed and administered to Mr. Washburn the following medications: Prozac, Risperdal, and Cogentin. All of these medications increased Mr. Washburn's risk of hyperthermia.

39.     Risperdal (risperidone) is known to cause disruption of body temperature regulation. Both hyperthermia and hypothermia have been reported in association with oral risperidone. Per labeling, caution is advised when patients will be exposed to temperature extremes.

40.     Individuals such as Mr. Washburn who take antipsychotic agents, including risperidone, are also at risk for neuroleptic malignant syndrome (NMS). This syndrome can cause high fever (102-104 degrees), muscle stiffness, excessive sweating, anxiety, fast or abnormal heart beat, increased saliva, and quick breaths.

41.     Cogentin (benztropine), when given concomitantly with drugs that have anticholinergic or antidopaminergic activity (such as Risperidone), may cause fever or heat intolerance. Paralytic ileus, hyperthermia, and heat stroke, with associated fatalities, have been reported.

42.     Prozac (fluoxetine) may cause serotonin syndrome. This adverse event may lead to autonomic instability, which may include hyperthermia.

43.     The risks associated with these medications are known by any reasonably trained prescriber.

## Transport

44.     On June 20, 2017, Mr. Washburn was scheduled to be transferred from ASPC-Kingman to ASPC-Tucson.

45.     The air conditioning in the transport bus was reportedly not functioning.

46.     It was also reported that the bus was overheating and was only

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax:   (602) 265-0267

able to travel at a speed of 30-35 miles per hour due to the heat. According to the National Weather Service, the temperature in Tucson hit 116 degrees that day. Phoenix experienced record heat of 119°.

47. COII King was driving the transport van during a portion of the trip and/or was present in the van during the transport; COII Tuccino also drove the transport van during a portion of the trip and was present in the van during the transport.

48. Sergeant Steven Gallardo supervised COII King and COII Tuccino.

49. On June 20, 2017, at approximately 4:30 a.m., COII King and COII Tuccino left ASPC-Tucson in transportation bus G819FG with 38 inmates en route to ASPC-Kingman.

50. COII King and COII Tuccino arrived at ASPC-Kingman at approximately 10:00 a.m.

51. COII King and COII Tuccino left ASPC-Kingman at approximately 1:05 p.m. with 11 inmates, including Mr. Washburn, with COII Tuccino driving and COII King as passenger.

52. At the time the transport bus left Kingman, COII King and COII Tuccino knew that it was hot in the passenger compartment of the transport bus and that they did not have adequate water to meet the needs of the inmates they were transporting, including Mr. Washburn.

53. COII King and COII Tuccino's route of travel from ASPC-Kingman to ASPC-Tucson took them through or near the Arizona cities of Wikieup, Wickenburg, Phoenix, and Marana, near ADC's prison complexes at Perryville and Phoenix with medical units, and near hospitals equipped to accept inmate patients for urgent or emergent care.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

54.     At approximately 3:05 p.m., just prior to the Town of Wikieup, Mr. Washburn began to pace inside the transport bus and complain about the heated temperature within the bus. Mr. Washburn asked for water, asked for medical help, and tried to remove his restraints, resulting in scrapes to his wrists.

55.     COII King threatened Mr. Washburn with a pepper ball launcher and directed him to sit down. Mr. Washburn complied with COII King's request.

56.     Neither COII King nor COII Tuccino informed a supervisor, contacted ADC, or initiated an ICS.

57.     The transportation team stopped in Wikieup to fuel the transport bus but were unable to due so, reportedly because of a problem with the fuel card.

58.     COII King and COII Tuccino chose to continue to Wickenburg (approximately 75 miles) from Wikieup.

59.     Outside of Wikieup, COII Tuccino pulled the bus to the side of the road because the check engine light and the temperature light came on. The bus was stopped on the side of the road for approximately 10 minutes until the emergency lights went out and the gauge showed the engine had cooled.

60.     Neither COII King nor COII Tuccino informed a supervisor, contacted ADC, or initiated an ICS.

61.     COII King and COII Tuccino subjected Mr. Washburn and the other inmates on the transport bus to increasingly hot temperatures within the bus.

62.     In violation of policy, and without informing a supervisor, ADC, or initiating an ICS, COII King and COII Tuccino opened the door to the inmate passenger area of the bus and removed an ice chest ("igloo") to refill the igloo

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

with ice and water at Filiberto's restaurant.

63.    Mr. Washburn informed the officers that he was overheated and needed medical attention, but neither COII King nor COII Tuccino informed a supervisor, contacted ADC, or initiated an ICS.

64.    At or before 4:35 p.m., Mr. Washburn suffered a seizure and became unresponsive. Neither COII King nor COII Tuccino informed a supervisor, contacted ADC, or initiated an ICS.

65.    At or near that time, Mr. Washburn vomited. Neither COII King nor COII Tuccino did anything to assist Mr. Washburn, despite being urged by the inmates on the transport bus to help him.

66.    At 4:40 p.m., COII Tuccino finally contacted Sgt. Gallardo. Sgt. Gallardo did not advise the officers to initiate an ICS or to divert the transport bus to an available state prison complex and/or medical center.

67.    Sgt. Gallardo contacted Licensed Practical Nurse Nidia Salazar ("LPN Salazar"), an employee and/or agent of Corizon.

68.    Upon information and belief, Sgt. Gallardo told LPN Salazar that Mr. Washburn had suffered a seizure, was overheated, was unresponsive to commands, had vomited repeatedly, but was still breathing.

69.    LPN Salazar did not ask to speak to the transporting officers directly, did not ask for a medical or mental health history, did not access Mr. Washburn's medical records, and did not seek clarification of Mr. Washburn's condition.

70.    LPN Salazar spoke to an "on-call" doctor.  The "on-call" doctor did not speak to the transporting officers directly, did not ask for a medical or mental health history, did not access Mr. Washburn's medical records, and did not seek clarification of Mr. Washburn's condition.

71.    COII King and COII Tuccino did not initiate ICS, and instead had

Mr. Washburn lay on the floor of the bus, while they continued to ASPC-Tucson. Mr. Washburn continued to vomit.

72.    Sgt. Gallardo delayed contacting COII King and COII Tuccino for almost an hour.

73.    At some point near Marana, Arizona, COII King and COII Tuccino finally initiated an ICS.

### Delayed Medical Response

74.    Mr. Washburn's medical record documented that he was prescribed three medications: Prozac, Risperdal, and Cogentin. The record also documented that he was seriously mentally ill (SMI).

75.    At 5:03 p.m., LPN Salazar documents: "IM [Mr. Washburn] is in transit from Kingman Private Prison to Tucson Complex." LPN Salazar further documents: "IM [Mr. Washburn] is vomiting and appears to be severely dehydrated."

76.    Severe dehydration/hypovolemia is a known life-threatening medical condition that requires urgent and/or emergent interventions. Untreated dehydration / hypovolemia can result in seizure, coma, and death.

77.    Mr. Washburn's death was pronounced at 7:58 P.M.

78.    At 10:00 p.m., after Mr. Washburn died, LPN Salazar documented that she had earlier been told that Mr. Washburn "was vomiting and feeling malaise."

79.    "Feeling malaise" is not synonymous with "severely dehydrated." "Feeling malaise" suggests that a patient has a general feeling of discomfort, illness, or lack of well-being.

80.    LPN Salazar was never told that Mr. Washburn was "feeling malaise" and her documentation to that effect in Corizon's medical record is a fabrication designed to deflect responsibility for having failed to appropriately

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax:   (602) 265-0267

and timely triage Mr. Washburn's serious medical condition.

81.   According to the record, LPN Salazar knew that Mr. Washburn suffered from paranoid schizophrenia and was prescribed psychotropic medications.

### Arrival at ASPC Tucson

82.   Shortly before the arrival of the transport bus at ASPC-Tucson medical staff from the prison were contacted and were standing by in the sally port. Tucson Fire Department paramedics were en route when the bus arrived.  Monnie Washburn was taken off the bus, apneic and unresponsive, and CPR was initiated. CPR continued for another 30 minutes before paramedics pronounced death.

83.   The Pima County Medical Examiner's Office concluded that Mr. Washburn died of heat stroke/hyperthermia.

84.   COII King and COII Tuccino failed to initiate ICS at approximately 1505 hours, when Mr. Washburn began to behave erratically and tried to remove his restraints. They failed to initiate ICS at approximately 1635 hours, when it was reported that Mr. Washburn had seizure like symptoms, vomited and became unresponsive.

85.   COII King and COII Tuccino did not contact their supervisor, Sgt. Gallardo, regarding the issues with Mr. Washburn until 1640 hours. Sgt. Gallardo did not elevate the issues regarding inmate Washburn to his supervisor, Lt. Baker, until 1858 hours. ICS was initiated by COII Tuccino, at the direction of Lt. Baker at approximately 1911 hours.

86.   ADC Central Communications was not aware of the issues regarding Mr. Washburn until ICS was initiated at 1911 hours.

87.   COII King and COII Tuccino admitted they did not render aid to Mr. Washburn within three minutes of becoming aware of Mr. Washburn

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax:   (602) 265-0267

1  being unresponsive or in medical crisis.

2      88.    COII King, COII Tuccino, and Sgt. Gallardo violated Department

3  Order 705, Department Order 807, and Duty Specific Post Order #26.

4      89.    One or more employees of ADC and/or Corizon lied to paramedics

5  and said that Mr. Washburn had become unresponsive at 6:50 p.m.

6

7  **CLAIMS FOR RELIEF**
**COUNT ONE**

8  **NEGLIGENCE**

9  **(State of Arizona / Corizon / Geo Group / Correct Care)**

10

11      90.    The foregoing paragraphs are incorporated as if full set forth

herein.

12      91.    Defendant State of Arizona through ADC owes and owed a non-

13  delegable duty of care to inmates in its custody, including Monnie Washburn,

14  which duty includes taking reasonable steps to recognize the need for, and

15  provide, medical attention and intervention.

16      92.    Defendant State of Arizona through ADC owes and owed a non-

17  delegable duty of care to inmates in its custody, including Monnie Washburn,

18  which duty also includes taking reasonable and necessary steps to reduce the

19  risk that inmates taking certain medications are exposed to extreme

20  temperatures known to put those inmates at risk for hyperthermia and other

21  medication-related complications.

22      93.    Defendant State of Arizona through ADC owes and owed a non-

23  delegable duty of care to provide safe transport for inmates in its custody,

24  including Monnie Washburn, which duty includes taking reasonable steps to

25  ensure that transport vehicles are safe and do not present an unreasonable

26  risk of harm to inmates.

27      94.    Geo Group owes and owed a duty to inmates in its custody,

28

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax:  (602) 265-0267

1   including Monnie Washburn, which duty includes taking reasonable steps to

2   reduce the risks that inmates taking certain medications are exposed to

3   extreme temperatures known to put those inmates at risk for hyperthermia

4   and other medication-related complications.

5   95.   Geo Group, Correct Care and Corizon owe and owed a duty of care

6   to Mr. Washburn to inform ADC of his medication status and any risk

7   inherent in that medication status.

8   96.   Corizon owes and owed a duty of care to Mr. Washburn to provide

9   accurate and appropriate information to minimize the risk of complications

10  from known medical conditions and to adequately respond to urgent and/or

11  emergency medical conditions.

12  97.   Correct Care owes and owed a duty of care to Mr. Washburn to

13  ensure that known medical and mental health conditions are communicated

14  when an inmate is transported.

15  98.   Defendants observed that Monnie Washburn was dangerously ill

16  and needing medical intervention and supervision and failed to report or

17  otherwise act upon their observations that Monnie Washburn was

18  dangerously ill and needing medical intervention and supervision.

19  99.   Defendants were negligent and/or grossly negligent by failing to

20  recognize Monnie Washburn's need for medical intervention, and by having

21  failed to provide such medical attention.

22  100.  Defendants breached their duty of care (1) by failing to take

23  appropriate steps to protect Mr. Washburn from known risks of complications

24  of his medications; (2) by forcing Mr. Washburn to unnecessarily endure life-

25  threatening conditions during the transport; (3) by ignoring his pleas for help;

26  (4) by ignoring the warnings of other inmates that Mr. Washburn was in

27  trouble; and (5) by failing to provide Mr. Washburn access to timely medical

28

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

care for his emergent medical condition.

101.   Defendants' negligence was the direct and proximate cause of the death of Plaintiffs' decedent Monnie Washburn; such death would not have happened without Defendants' negligence.

102.   Monnie Washburn's death caused injury and loss to Plaintiff and the statutory beneficiaries of Monnie Washburn.

## COUNT TWO
## MEDICAL NEGLIGENCE
### (Corizon)

103.   The foregoing paragraphs are incorporated as if full set forth herein.

104.   As set forth above, Corizon and/or Correct Care prescribed medications to Monnie Washburn that they knew would increase Mr. Washburn's risk of adverse side effects, including hypothermia and death.

105.   Corizon and/or Correct Care failed to take steps to mitigate the risk of death, including, upon information and belief, failing to warn Defendant State of Arizona of the risk of transporting Mr. Washburn in a transport van without air conditioning in the Arizona summer heat.

106.   Once Corizon learned of Mr. Washburn's emergent condition during transport, Corizon failed to provide appropriate advice to officers, including the recommendation that Mr. Washburn be taken immediately to a higher level of care to prevent his death.

107.   After Mr. Washburn's death, employees of Corizon falsified the medical record to deflect responsibility for their negligence.

108.   Defendants ADOC, Corizon, and their employees are health care providers and, as such, owe and owed Monnie Washburn the duty to exercise

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

that degree of care, skill, and learning that would be expected under similar circumstances of a reasonably prudent health care provided within this state.

109.   Were it not for the failure of Defendants and their employees to comply with the applicable standard of care, Monnie Washburn would have received timely medical treatment and would not have died.

110.   Monnie Washburn's death caused injury and loss to Plaintiffs and the statutory beneficiaries of Monnie Washburn.

## COUNT THREE
### (Deliberate Indifference / 42 U.S.C. § 1983)
### (Individual Defendants Tuccino, King, and Gallardo)

111.   Plaintiff incorporates the allegations set forth above.

112.   On June 20, 2017, Monnie Washburn was incarcerated within the Arizona Department of Corrections.

113.   During the transport as described in this Complaint, Mr. Washburn presented with a serious medical need requiring prompt medical attention including transport to a facility where he could receive medical attention.

114.   The serious medical need began when Mr. Washburn began to complain that he was hot and needed medical care.

115.   The serious medical need continued and became more urgent, as Mr. Washburn suffered seizures, vomiting, heat exhaustion, heat stroke, hypovolemia, hyperthermia, dehydration, and loss of consciousness.

116.   During the transport, Mr. Washburn's condition further deteriorated and became life-threatening.

117.   Sgt. Gallardo was informed of Mr. Washburn's serious medical

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax:  (602) 265-0267

1    need. Ultimately, Mr. Washburn died because Defendants Tuccino, King, and

2    Gallardo were deliberately indifferent to his medical needs.

3         118.  The inmates on the transport bus recognized Mr. Washburn's

4    serious medical need and begged COII Tuccino and COII King to rendered

5    medical aid to Mr. Washburn.

6         119.  Examples of Defendant Tuccino's deliberate indifference include,

7    but are not limited:

8        a. Undertaking the transport of inmates in Arizona in the summer

9          knowing that there was insufficient ventilation and/or air

10          conditioning on the transport bus;

11        b. Continuing the transport of inmates without keeping contact with

12          ADC;

13        c. Leaving ASPC-Kingman with inmates in the transport bus

14          without having sufficient drinking water;

15        d. Hearing, and being deliberately indifferent to, Mr. Washburn's

16          complaints of overheating;

17        e. Hearing, and being deliberately indifferent to, Mr. Washburn's

18          pleas for medical attention;

19        f. Seeing, and being deliberately indifferent to, Mr. Washburn

20          vomiting on himself and being left on the floor of the bus in his

21          own vomit;

22        g. Seeing, and being deliberately indifferent to, Mr. Washburn

23          experiencing seizures;

24        h. Seeing, and being deliberately indifferent to, the change in Mr.

25          Washburn's level of consciousness, and ultimately loss of

26          consciousness;

27        i. Recognizing, but being deliberately indifferent to, Mr. Washburn's

28

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

seizures;

j.  Recognizing, but being deliberately indifferent to, Mr. Washburn's heat-related illness.

120.  Examples of Defendant King's deliberate indifference include, but are not limited:

a.  Undertaking the transport of inmates in Arizona in the summer knowing that there was insufficient ventilation and/or air conditioning on the transport bus;

b.  Continuing the transport of inmates without keeping contact with ADC;

c.  Leaving ASPC-Kingman with inmates in the transport bus without having sufficient drinking water;

d.  Hearing, and being deliberately indifferent to, Mr. Washburn's complaints of overheating;

e.  Hearing, and being deliberately indifferent to, Mr. Washburn's pleas for medical attention;

f.  Seeing, and being deliberately indifferent to, Mr. Washburn vomiting on himself and being left on the floor of the bus in his own vomit;

g.  Seeing, and being deliberately indifferent to, Mr. Washburn experiencing seizures;

h.  Seeing, and being deliberately indifferent to, the change in Mr. Washburn's level of consciousness, and ultimately loss of consciousness;

i.  Recognizing, but being deliberately indifferent to, Mr. Washburn's seizures;

j.  Recognizing, but being deliberately indifferent to, Mr. Washburn's

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax:  (602) 265-0267

heat-related illness.

121.    Examples of Defendant Gallardo's deliberate indifference include, but are not limited to:

    a. Knowing, and being deliberately indifferent to, information Mr. Washburn had suffered seizures, heat-related illness, and altered level of consciousness;

    b. Knowing, and being deliberately indifferent to, delays in getting Mr. Washburn urgent and emergent medical care;

    c. Knowing, and being deliberately indifferent to, violations of policy that resulted in Mr. Washburn's heat-related illness progressing to his death.

122.    Defendants have known since no later than 2010 and the publication of *Graves v. Arpaio,* 623 F.3d 1043 (9th Cir. 2010) that it is a violation of the Eighth Amendment to subject inmates taking psychotropic medications to temperatures exceeding 85 degree.

123.    The Constitutional violations as set forth in this Count and as set forth generally in this complaint caused Mr. Washburn to suffer actual and grievous injury, with resulting pre-death pain and suffering.

124.    The Constitutional violations as set forth in this Count and as set forth generally in this complaint caused Plaintiffs to suffer harms and losses as surviving statutory beneficiaries of Mr. Washburn.

125.    Plaintiffs as stated herein have standing and hereby assert claims under the 8th and 14th Amendments to the United State Constitution.

## COUNT FOUR

### (Deliberate Indifference / 42 U.S.C. § 1983)

### (Defendant Corizon)

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

126.   Plaintiff incorporates the allegations set forth above.

127.   Corizon is a for-profit private corporation that contracts with the State of Arizona / Arizona Department of Corrections to provide medical, dental, and mental health care to inmates in the custody of ADC.

128.   As a for-profit private corporation, Corizon has a financial incentive to delay and/or deny inmates access to outside medical care.

129.   Corizon is a state actor as that term is used in the jurisprudence of federal civil rights law, 42 U.S.C. § 1983.

130.   As set forth in this Count and through this Complaint, Corizon was deliberately indifferent to the serious medical need of Monnie Washburn, an inmate in the custody of ADC.

131.   The serious medical need was identified to Corizon at or before 5:03 p.m. on June 20, 2017, when Corizon was notified that Mr. Washburn was suffering from vomiting and severe dehydration, which is an urgent/emergent medical requiring treatment by an appropriate medical provider.

132.   Rather than divert the transport to an appropriate health care provider, Corizon advised officers to continue to transport Mr. Washburn to ASPC-Tucson.

133.   Deliberate indifference to Mr. Washburn's serious medical need is demonstrated by Corizon's failure to advise officers to access urgent and/or emergent medical care.

134.   Falsification of the medical record by Corizon is evidence of willful or malevolent intent.

135.   Corizon violated Mr. Washburn's right to be free from cruel and unusual punishment.

136. Corizon violated Plaintiffs' rights under the 14th Amendment to familial association.

137. As a result of the conduct alleged in this Count and throughout this Complaint, Monnie Washburn suffered actual injury resulting in needless pre-death pain and suffering.

138. As a result of the conduct alleged in this Count and through this Complaint, Plaintiffs suffered harms and losses, including the loss of Mr. Washburn.

### COUNT FIVE
### (All Defendants)

139. As set forth above, Monnie Washburn's death was caused by wrongful act, neglect, or default.

140. The act, neglect, or default as set forth in this complaint, if death had not ensued, would have entitled Mr. Washburn to maintain an action to recover damages in respect thereof.

141. As a result, Defendants are liable to Plaintiff and the statutory beneficiaries of Monnie Washburn for damages that resulted from Mr. Washburn's death.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.    For special damages;

B.    For lost wages, income, and other economic losses;

C.    For other general damages, including but not limited to pain and suffering, loss of enjoyment of life and other emotional trauma;

D.    For exemplary damages to the extent permitted by law;

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

1   E. For taxable costs and pre- and post-judgment interest to the extent

2 permitted by law;

3   F. Such other relief as the Court deems just and proper.

4

5

6   DATED this January 7, 2019.

7        ROBBINS & CURTIN, p.l.l.c.

8

9       By: */s/ Anne E. Findling*

10         Joel B. Robbins

         Anne E. Findling

11         301 E. Bethany Home Road, Suite B-100

         Phoenix, Arizona 85012

12         *Attorneys for Plaintiff*

13

14

15 The foregoing electronically filed

16 this January 7, 2019 to:

17 Clerk of the Court

18 Maricopa County Superior Court

19 COPIES of the foregoing e-served/emailed this same day to:

20

21 Mandi J. Karvis

 Anngelica N. Davis

22 WICKER SMITH O'HARA McCOY & FORD, P.A.

 One N. Central Ave., Suite 885

23 Phoenix, AZ 85004

 *Attorneys for Defendants*

24

25

26 By: /s/ Kimberly A. Wolf

27

28

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

**EXHIBIT 2**

1   Joel B. Robbins (011065)
2   Anne E. Findling (010871)
    ROBBINS & CURTIN, P.L.L.C.
3   301 E. Bethany Home Road, Suite B-100
    Phoenix, Arizona 85012-0001
4   Telephone: (602) 285-0100
    Facsimile: (602) 265-0267
5   joel@robbinsandcurtin.com
    anne@robbinsandcurtin.com
6

7   *Attorneys for Plaintiff*
8

9        IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

10        IN AND FOR THE COUNTY OF MARICOPA

11

12   JENNIFER POWER, individually and
13   on behalf of the statutory beneficiaries       No.  CV2018-008861
     of MONNIE WASHBURN, Deceased;
14   ESTATE OF MONNIE WASHBURN,

15          Plaintiff,

16                                                   FIRST AMENDED
     vs.                                             COMPLAINT
17
18   STATE OF ARIZONA, a governmental                (Wrongful Death)
     entity; CORIZON HEALTH, INC., a
19   Missouri corporation, doing business in the     **(Jury Trial Requested)**
     State of Arizona; CORIZON, INC., a
20   Missouri corporation, doing business in the
     State of Arizona; CORIZON, LLC, a foreign
21   limited liability company, CORRECT
22   CARE SOLUTIONS, LLC a foreign
     limited liability company doing
23   business in Arizona; THE GEO
24   GROUP, INC., a Florida Corporation
     doing business in Arizona;
25   CORRECTIONS OFFICER DALE A.
26   KING, individually; CORRECTIONS
     OFFICER ANTONIO R. TUCCINO,
27   individually; SERGEANT STEVEN
28   GALLARDO, individually;

                         Page 1 of 23

Defendants.

Plaintiff Jennifer Power, individually and on behalf of the statutory beneficiaries of Monnie Washburn, and in her capacity as personal representative of the Estate of Monnie Washburn, deceased, for her Complaint against Defendants, allege as follows:

## PARTIES

1.     Plaintiff, Jennifer Power, is the wife of Monnie Washburn, deceased, and brings this action individually and on behalf of the statutory beneficiaries of Monnie Washburn.

2.     Mr. Washburn was Jennifer Power is also the duly appointed personal representative of the Estate of Monnie Washburn, Maricopa County Superior Court No. PB2018-003467.

2. 3.     Mr. Washburn is also survived by two children, who are statutory beneficiaries pursuant to A.R.S. § 12-612 (A).

3. 4.     Decedent Monnie Washburn was a resident of the State of Arizona. Although incarcerated within the Arizona Department of Corrections (ADC) at the time of his death, Mr. Washburn's residence was in Maricopa County, Arizona prior to his incarceration.  Mr. Washburn died on June 20, 2017.

5.     At the time of his death, Mr. Washburn was actively being treated for mental illness and was being prescribed psychotropic medications as

*Formatted: Font: Century Schoolbook*

*Formatted: Font: Century Schoolbook*

*Formatted: Font: Century Schoolbook*

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

reflected in his ADC assigned mental health score of 3M.

4.6. The State of Arizona is a body politic; the Arizona Department of Corrections (ADC) is a department of the State of Arizona.

5.7. The State of Arizona has a non-delegable duty for the care and custody of inmates within the Arizona State Prison System, including providing health care services to those incarcerated in the system.

6.8. The State of Arizona is responsible for the actions of ADC, its medical and mental health staff, its corrections staff, and other ADC employees.

9. The State of Arizona promulgates Department Orders, General Orders, Directors Instructions, Post Orders, and other rules and regulations to ensure the safety of the community, the safety of employees of ADC, and the safety of inmates in ADC's custody (collectively "ADC Policy.")

10. The State of Arizona mandates the training, retraining, and currency training for ADC employees (collectively "ADC Training") on ADC Policy.

11. The State of Arizona protects certain aspects of ADC Policy from public disclosure.

7.12. Pursuant to A.R.S. § 31-201.01, any and all causes of action which may arise out of tort caused by the director, prison officers or employees of the department, within the scope of their legal duty, shall run only against the State.

8.13. Defendants Corizon Health, Inc., Corizon, Inc. and Corizon LLC are related, for-profit foreign business entities, who contract and conduct business within the State of Arizona. These entities will be referred to as "Corizon."

9.14. Corizon has a corporate office in Maricopa County, Arizona.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 • Fax: (602) 265-0267

Corizon also conducts business in Maricopa County and other locations within the State of Arizona.

10.15.    Effective March 4, 2013, Defendant Corizon Health, Inc. contracted with the State of Arizona / Arizona Department of Corrections, to provide full service medical, mental health, and dental care (collectively "healthcare") to the inmates housed at ASPC-Douglas, ASPC-Phoenix, ASPC-Eyman, ASPC-Safford, ASPC-Florence, ASPC-Tucson, ASPC-Lewis, ASPC-Winslow, ASPC-Perryville, ASPC-Yuma.

11.16.    The State of Arizona retained monitoring responsibility for Defendant Corizon's provision of health care to inmates within the Arizona Department of Corrections prison system.

17.    The State of ArizonaDefendant Correct Care Solutions, LLC ("Correct Care") is a foreign limited liability company doing business in the State of Arizona. Correct Care is a contracted provider for medical and mental health care to inmates housed at ASPC-Kingman.

18.    Defendant GEO Group ("GEO") is a foreign for-profit corporation doing business in the State of Arizona. GEO Group contracts with the State of Arizona to operate the prison complex at ASPC-Kingman. Geo Group is responsible for the actions of its employees, contractors and agents in the scope of their engagement.

12.19.    ADC Policy requires inmates to be provided opportunities for reasonable and appropriate access to a community standard of health care and appropriate referrals for inmates who appear for treatment.

20.    ADC Policy requires corrections officers and others charged with the supervision of inmates to regularly conduct health and safety checks, and to record those checks.

21.   ADC Policy requires corrections officers to respond to medical emergencies involving inmates within three minutes. Examples of medical emergencies for which officers receive training include seizures, heat exhaustion, and heat stroke.

22.   ADC Policy requires corrections officers who are transporting inmates within the state to conduct regular equipment checks of security devices and transportation vehicles.

23.   ADC Policy requires corrections officers to keep accurate records of health and safety checks of inmates and to regularly report those security checks.

24.   ADC Policy provides for emergency response through its Incident Command System ("ICS"). One purpose of ICS is to mobilize resources during an emergency for the safety of the community, the staff, and the inmates.

25.   Defendant Corrections Officer Dale A. King ("CO King") is or was an employee of the State of Arizona as a corrections officer at the time of the events that give rise to this action.

26.   Defendant Corrections Officer Antonio R. Tuccino ("CO Tuccino") is or was an employee of the State of Arizona as a corrections officer at the time of the events that give rise to this action.

27.   Defendant Corrections Sergeant Steven Gallardo ("Sgt. Gallardo") is or was an employee of the State of Arizona as a corrections sergeant at the time of the events that give rise to this action.

28.   Defendants King, Tuccino, and Gallardo are named individually for purposes of a federal civil rights claim pursuant to 42 U.S.C. § 1983. Defendants King, Tuccino, and Gallardo are state actors as that term is used in the jurisprudence of federal civil rights law. Defendants King, Tuccino and Gallardo acted under color of state law.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707  ●  Fax:  (602) 265-0267

13.29. Corizon has, Correct Care, and Geo Group have caused events to occur in the State of Arizona and isare subject to this Court's jurisdiction.

## JURISDICTION AND VENUE

14.30. The amount in controversy exceeds the jurisdictional threshold of the Court.

15.31. A timely notice of claim pursuant to A.R.S. § 12-821.01 was served on Defendant State of Arizona on December 15, 2017. More than sixty (60) days have passed since this Notice of Claim was served upon the Defendant. By operation of statute, the claim is deemed denied.

16.32. This is an action against the State of Arizona. Venue is proper in the Superior Court in and for Maricopa County.

33. This Court has jurisdiction for claims made under 42 U.S.C. § 1983. A trial by jury is demanded for all claims asserted in this action.

## FACTUAL BACKGROUND

17.34. At the timetimes relevant to the present dispute, Monnie Washburn was an inmate within the Arizona Department of Corrections, housed at the ASP Kingman facility.Arizona State Prison Complex at Kingman, Arizona (ASPC-Kingman).

18.35. Monnie Washburn was serving a term of incarceration at ASPC Kingman, in Mohave County, Arizona, with a maximum end date of February 15, 2019.

36. On June 20, 2016, Mr. Washburn was being transferred from ASPC-Kingman, operated by Geo Group, to a state-run prison facility in Tucson (ASPC-Tucson).

37. Upon information and belief, Geo Group and/or Correct Care was responsible for ensuring that Mr. Washburn's medical and/or mental health conditions were accurately and timely reported in anticipation of the transfer

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

*Formatted: Font: Century Schoolbook*

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ● Fax: (602) 265-0267

from ASPC-Kingman to ASPC-Tucson.

### Medications

~~19.~~38. Corizon _and/or Correct Care_ prescribed and administered to Mr. Washburn the following medications: Prozac, Risperdal, and Cogentin. All of these medications increased Mr. Washburn's risk of hyperthermia.

~~20.~~39. Risperdal (risperidone) is known to cause disruption of body temperature regulation. Both hyperthermia and hypothermia have been reported in association with oral risperidone. Per labeling, caution is advised when patients will be exposed to temperature extremes.

~~21.~~40. Individuals such as Mr. Washburn who take antipsychotic agents, including risperidone, are also at risk for neuroleptic malignant syndrome (NMS). This syndrome can cause high fever (102-104 degrees), muscle stiffness, excessive sweating, anxiety, fast or abnormal heart beat, increased saliva, and quick breaths.

~~22.~~41. Cogentin (benztropine), when given concomitantly with drugs that have anticholinergic or antidopaminergic activity (such as ~~Riseridone~~Risperidone), may cause fever or heat intolerance. Paralytic ileus, hyperthermia, and heat stroke, with associated fatalities, have been reported.

~~23.~~42. Prozac (fluoxetine) may cause serotonin syndrome. This adverse event may lead to autonomic instability, which may include hyperthermia.

~~24.~~43. The risks associated with these medications are known by any reasonably trained prescriber.

### Transport

44.    On ~~the morning of~~ June 20, 2017, Mr. Washburn was ~~being~~scheduled ~~to be~~ transferred from ~~the State Prison Complex in~~ ASPC-Kingman to ~~the State Prison Complex in~~ ASPC-Tucson~~, via an ADC bus in which the~~.

Page 7 of 23

1    45.   The air conditioning in the transport bus was reportedly not

2    functioning.

3    25. 46. It was also reported that the bus was overheating, and was only

4    able to travel at a speed of 30-35 miles per hour due to the heat.  According to

5    the National Weather Service, the temperature in Tucson hit 116 degrees that

6    day. Phoenix experienced record heat of 119°.

7    26.   Correctional Officer II Dale A. COII King (CO II King) was driving the

8    transport van.

9    27. 47. Correctional Officer II Antonio R. Tuccino (COII Tuccino)  during a

10    portion of the trip and/or was present in the van during the transport; COII

11    Tuccino also drove the transport van during a portion of the trip and was

12    present in the van during the transport.

13    48.   Sergeant Steven Gallardo acted in a supervisory role to supervised

14    COII King and COII Tuccino.

15    49.   On June 20, 2017, at approximately 4:30 a.m., COII King and COII

16    Tuccino. left ASPC-Tucson in transportation bus G819FG with 38 inmates en

17    route to ASPC-Kingman.

18    50.   COII King and COII Tuccino arrived at ASPC-Kingman at

19    approximately 10:00 a.m.

20    51.   COII King and COII Tuccino left ASPC-Kingman at approximately

21    1:05 p.m. with 11 inmates, including Mr. Washburn, with COII Tuccino driving

22    and COII King as passenger.

23    52.   At the time the transport bus left Kingman, COII King and COII

24    Tuccino knew that it was hot in the passenger compartment of the transport

25    bus and that they did not have adequate water to meet the needs of the inmates

26    they were transporting, including Mr. Washburn.

27    53.   COII King and COII Tuccino's route of travel from ASPC-Kingman

28

ROBBINS & CURTIN, p.l.l.c.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707  ●  Fax: (602) 265-0267

Page 8 of 23

Formatted: Font: Century Schoolbook
Formatted: Font: Century Schoolbook
Formatted: Font: Century Schoolbook
Formatted: Font: Century Schoolbook
Formatted: Font: Century Schoolbook
Formatted: Font: Century Schoolbook
Formatted: Font: Century Schoolbook
Formatted: Font: Century Schoolbook
Formatted: Font: Century Schoolbook
Formatted: Font: Century Schoolbook

to ASPC-Tucson took them through or near the Arizona cities of Wikieup,
Wickenburg, Phoenix, and Marana, near ADC's prison complexes at Perryville
and Phoenix with medical units, and near hospitals equipped to accept inmate
patients for urgent or emergent care.

28.

54.   At approximately 3:0005 p.m., it was reported thatjust prior to the
Town of Wikieup, Mr. Washburn began to behave erraticallypace inside the
transport bus and complain about the heated temperature within the bus. Mr.
Washburn asked for water, asked for medical help, and tried to remove his
restraints. By 4:30 p.m., while still, resulting in scrapes to his wrists.

55.   COII King threatened Mr. Washburn with a pepper ball launcher
and directed him to sit down. Mr. Washburn complied with COII King's
request.

56.   Neither COII King nor COII Tuccino informed a supervisor,
contacted ADC, or initiated an ICS.

57.   The transportation team stopped in Wikieup to fuel the transport
bus but were unable to due so, reportedly because of a problem with the fuel
card.

58.   COII King and COII Tuccino chose to continue to Wickenburg
(approximately 75 miles) from Wikieup.

59.   Outside of Wikieup, COII Tuccino pulled the bus to the side of the
road because the check engine light and the temperature light came on the bus.
Mr. Washburn fell ill. The bus was stopped on the side of the road for
approximately 10 minutes until the emergency lights went out and the gauge
showed the engine had cooled.

60.   Neither COII King nor COII Tuccino informed a supervisor,
contacted ADC, or initiated an ICS.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone (602) 285-0707 ♦ Fax (602) 265-0267

61.   COII King and COII Tuccino subjected Mr. Washburn and the other inmates on the transport bus to increasingly hot temperatures within the bus.

62.   In violation of policy, and without informing a supervisor, ADC, or initiating an ICS, COII King and COII Tuccino opened the door to the inmate passenger area of the bus and removed an ice chest ("igloo") to refill the igloo with ice and water at Filiberto's restaurant.

63.   Mr. Washburn informed the officers that he was overheated and needed medical attention, but neither COII King nor COII Tuccino informed a supervisor, contacted ADC, or initiated an ICS.

29 64. At or before 4:35 p.m., Mr. Washburn suffered a seizure like symptoms, began vomiting and and became unresponsive. ICS was not initiated nor was aid rendered to him Neither COII King nor COII Tuccino informed a supervisor, contacted ADC, or initiated an ICS.

65.   At or near that time, Mr. Washburn vomited. Neither COII King nor COII Tuccino did anything to assist Mr. Washburn, despite being urged by the inmates on the transport bus to help him.

66.   At 4:40 p.m., COII Tuccino finally contacted Sgt. Gallardo. Sgt. Gallardo did not advise the officers to initiate an ICS or to divert the transport bus to an available state prison complex and/or medical center.

67.   Sgt. Gallardo contacted Licensed Practical Nurse Nidia Salazar, ("LPN Salazar"), an employee and/or agent of Corizon and,

68.   Upon information and belief, Sgt. Gallardo told LPN Salazar that Mr. Washburn had suffered a seizure, was overheated, was unresponsive to commands, had vomited repeatedly, but was still breathing.

69.   LPN Salazar did not ask to speak to the transporting officers directly, did not ask for a medical or mental health history, did not access Mr.

Formatted: Font: Century Schoolbook

Formatted: Font: Century Schoolbook

Formatted: Font: Century Schoolbook

Formatted: Font: Century Schoolbook

Formatted: Font: Century Schoolbook

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone (602) 285-0707  ♦  Fax: (602) 265-0267

1  Washburn's medical records, and did not seek clarification of Mr. Washburn's

2  condition.

3     ~~30.~~70. LPN Salazar spoke to an "on-call" doctor ~~made remote~~

4  ~~recommendations to COII King and COII Tuccino regarding Mr. Washburn's medical~~

5  ~~status.~~ The "on-call" doctor did not speak to the transporting officers directly,

6  did not ask for a medical or mental health history, did not access Mr.

7  Washburn's medical records, and did not seek clarification of Mr. Washburn's

8  condition.

Formatted: Font: Century Schoolbook

9     ~~31.~~71. COII King and COII Tuccino did not initiate ICS, and instead had

10  Mr. Washburn lay on the floor of the bus, while they continued ~~on to the Tucson~~

11  ~~DOC Complex, arriving approximately three hours later.~~ to ASPC-Tucson. Mr.

12  Washburn continued to vomit.

13     72.   Sgt. Gallardo delayed contacting COII King and COII Tuccino for

14  almost an hour.

15     73.   At some point near Marana, Arizona, COII King and COII Tuccino

16  finally initiated an ICS.

17                    **Delayed Medical Response**

18     74.   Mr. Washburn's medical record documented that he was prescribed

19  three medications: Prozac, Risperdal, and Cogentin. The record also

20  documented that he was seriously mentally ill (SMI).

21     75.   At 5:03 p.m., LPN Salazar documents: "IM [Mr. Washburn] is in

22  transit from Kingman Private Prison to Tucson Complex." LPN Salazar further

23  documents: "IM [Mr. Washburn] is vomiting and appears to be severely

24  dehydrated."

25     76.   Severe dehydration/hypovolemia is a known life-threatening

26  medical condition that requires urgent and/or emergent interventions.

27  Untreated dehydration / hypovolemia can result in seizure, coma, and death.

28

Page 11 of 23

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone (602) 285-0707 ♦ Fax (602) 265-0267

77.    Mr. Washburn's death was pronounced at 7:58 P.M.

78.    At 10:00 p.m., after Mr. Washburn died, LPN Salazar documented that she had earlier been told that Mr. Washburn "was vomiting and feeling malaise."

79.    "Feeling malaise" is not synonymous with "severely dehydrated." "Feeling malaise" suggests that a patient has a general feeling of discomfort, illness, or lack of well-being.

80.    LPN Salazar was never told that Mr. Washburn was "feeling malaise" and her documentation to that effect in Corizon's medical record is a fabrication designed to deflect responsibility for having failed to appropriately and timely triage Mr. Washburn's serious medical condition.

81.    According to the record, LPN Salazar knew that Mr. Washburn suffered from paranoid schizophrenia and was prescribed psychotropic medications.

### Arrival at ASPC Tucson

~~32.~~ 82. Shortly before the arrival of the transport bus at ASPC-Tucson medical staff from the prison were contacted and were standing by in the sally port, ~~and,~~ Tucson Fire Department paramedics were en route when the bus arrived. Monnie Washburn was taken off ~~of~~ the bus, apneic and unresponsive, and CPR was initiated. CPR continued for another 30 minutes before paramedics pronounced death.

~~33.~~ 83. The Pima County Medical Examiner's Office concluded that Mr. Washburn died of heat stroke/hyperthermia.

84.    COII King and COII Tuccino failed to initiate ICS at approximately 1505 hours, when Mr. Washburn began to behave erratically and tried to remove his restraints. They failed to initiate ICS at approximately 1635 hours, when it was reported that Mr. Washburn had seizure like symptoms, vomited

Page 12 of 23

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone (602) 285-0707 ♦ Fax   (602) 265-0267

Formatted: Font: Century Schoolbook

Formatted: Font: Century Schoolbook

Formatted: Font: Century Schoolbook

and became unresponsive.

85.   COII King and COII Tuccino did not contact their supervisor, Sgt. Gallardo, regarding the issues with Mr. Washburn until 1640 hours. Sgt. Gallardo did not elevate the issues regarding inmate Washburn to his supervisor, Lt. Baker, until 1858 hours. ICS was initiated by COII Tuccino, at the direction of Lt. Baker at approximately 1911 hours.

86.   ADC Central Communications was not aware of the issues regarding Mr. Washburn until ICS was initiated at 1911 hours.

87.   COII King and COII Tuccino admitted they did not render aid to Mr. Washburn within three minutes of becoming aware of Mr. Washburn being unresponsive or in medical crisis.

88.   COII King, COII Tuccino, and Sgt. Gallardo violated Department Order 705, Department Order 807, and Duty Specific Post Order #26.

89.   One or more employees of ADC and/or Corizon lied to paramedics and said that Mr. Washburn had become unresponsive at 6:50 p.m.

**CLAIMS FOR RELIEF**
**COUNT ONE**
**NEGLIGENCE**
**(State of Arizona / Corizon / Geo Group / Correct Care)**

34. 90. The foregoing paragraphs are incorporated as if full set forth herein.

35. 91. Defendant State of Arizona through ADC owes and owed a non-delegable duty of care to inmates in its custody, including Monnie Washburn, which duty includes taking reasonable steps to recognize the need for, and provide, medical attention and intervention.

36. 92. Defendant State of Arizona through ADC owes and owed a non-delegable duty of care to inmates in its custody, including Monnie Washburn,

Page 13 of 23

*Formatted: Font: Century Schoolbook*

*Formatted: Font: Century Schoolbook*

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone (602) 285-0707 ♦ Fax (602) 265-0267

which duty also includes taking reasonable and necessary steps to reduce the risk that inmates taking certain medications are exposed to extreme temperatures known to put those inmates at risk for hyperthermia and other medication-related complications.

93.   ~~Corizon owes and owed a duty of care to Mr.~~Defendant State of Arizona through ADC owes and owed a non-delegable duty of care to provide safe transport for inmates in its custody, including Monnie Washburn, which duty includes taking reasonable steps to ensure that transport vehicles are safe and do not present an unreasonable risk of harm to inmates.

94.   Geo Group owes and owed a duty to inmates in its custody, including Monnie Washburn, which duty includes taking reasonable steps to reduce the risks that inmates taking certain medications are exposed to extreme temperatures known to put those inmates at risk for hyperthermia and other medication-related complications.

~~37.~~95. Geo Group, Correct Care and Corizon owe and owed a duty of care to Mr. Washburn to inform ADC of his medication status and any risk inherent in that medication status.

~~38.~~96. Corizon owes and owed a duty of care to Mr. Washburn to provide accurate and appropriate information to minimize the risk of complications from known medical conditions and to adequately respond to urgent and/or emergency medical conditions.

97.   Correct Care owes and owed a duty of care to Mr. Washburn to ensure that known medical and mental health conditions are communicated when an inmate is transported.

~~39.~~98. Defendants ~~also~~ observed, that Monnie Washburn was dangerously ill and needing medical intervention and supervision and failed to report or

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Formatted: Font: Century Schoolbook
Formatted: Font: Century Schoolbook
Formatted: Font: Century Schoolbook
Formatted: Font: Century Schoolbook

1   otherwise act upon their observations, that Monnie Washburn was dangerously

2   ill and needing medical intervention and supervision.

3   ~~10.~~99. Defendants were negligent and/or grossly negligent by failing to

4   recognize Monnie Washburn's need for medical intervention, and by having

5   failed to provide such medical attention.

6   ~~11.~~100.   Defendants breached their duty of care (1) by failing to take

7   appropriate steps to protect Mr. Washburn ~~for~~from known risks of

8   complications of his medications; (2) by forcing Mr. Washburn to unnecessarily

9   endure life-threatening conditions ~~over a period of time~~during the transport; (3)

10  by ignoring his pleas for help; (4) by ignoring the warnings of other inmates

11  that Mr. Washburn was in trouble; and (5) by failing to provide Mr. Washburn

12  access to timely medical care for his emergent medical condition.

13  ~~12.~~101.   Defendants' negligence was the direct and proximate cause of

14  the death of Plaintiffs' decedent Monnie Washburn; such death would not have

15  happened without Defendants' negligence.

16  ~~13.~~102.   Monnie Washburn's death caused injury and loss to

17  ~~Plaintiffs~~Plaintiff and the statutory beneficiaries of Monnie Washburn.

18

19

20

21                        **COUNT TWO**
                   **MEDICAL NEGLIGENCE**
22                         **(Corizon)**

23  ~~14.~~103.   The foregoing paragraphs are incorporated as if full set forth

24  herein.

25  ~~15.~~104.   As set forth above, Corizon and/or Correct Care prescribed

26  medications to Monnie Washburn that ~~it~~they knew would increase Mr.

27  Washburn's risk of adverse side effects, including hypothermia and death.

28

Page 15 of 23

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone (602) 285-0707 ● Fax (602) 265-0267

Formatted: Font: Century Schoolbook
Formatted: Font: Century Schoolbook
Formatted: Font: Century Schoolbook
Formatted: Font: Century Schoolbook
Formatted: Font: Century Schoolbook
Formatted: Font: Century Schoolbook
Formatted: Font: Century Schoolbook
Formatted: Font: Century Schoolbook

46. 105.   Corizon and/or Correct Care failed to take steps to mitigate the risk of death, including, upon information and belief, failing to warn Defendant State of Arizona of the risk of transporting Mr. Washburn in a transport van without air conditioning in the Arizona summer heat.

47. 106.   Once Corizon learned of Mr. Washburn's emergent condition during transport, Corizon failed to provide appropriate advise advice to officers, including the recommendation that Mr. Washburn be taken immediately to a higher level of care to prevent his death.

107.   After Mr. Washburn's death, employees of Corizon falsified the medical record to deflect responsibility for their negligence.

48. 108.   Defendants ADOC, Corizon, and their employees are health care providers and, as such, owe and owed Monnie Washburn the duty to exercise that degree of care, skill, and learning that would be expected under similar circumstances of a reasonably prudent health care provided within this state.

49. 109.   Were it not for the failure of Defendants and their employees to comply with the applicable standard of care, Monnie Washburn would have received timely medical treatment and would not have died.

50. 110.   Monnie Washburn's death caused injury and loss to Plaintiffs and the statutory beneficiaries of Monnie Washburn.

## COUNT THREE

### (Deliberate Indifference / 42 U.S.C. § 1983)
### (Individual Defendants Tuccino, King, and Gallardo)

111.   Plaintiff incorporates the allegations set forth above.

112.   On June 20, 2017, Monnie Washburn was incarcerated within the

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Arizona Department of Corrections.

113.  During the transport as described in this Complaint, Mr. Washburn presented with a serious medical need requiring prompt medical attention including transport to a facility where he could receive medical attention.

114.  The serious medical need began when Mr. Washburn began to complain that he was hot and needed medical care.

115.  The serious medical need continued and became more urgent, as Mr. Washburn suffered seizures, vomiting, heat exhaustion, heat stroke, hypovolemia, hyperthermia, dehydration, and loss of consciousness.

116.  During the transport, Mr. Washburn's condition further deteriorated and became life-threatening.

117.  Sgt. Gallardo was informed of Mr. Washburn's serious medical need. Ultimately, Mr. Washburn died because Defendants Tuccino, King, and Gallardo were deliberately indifferent to his medical needs.

118.  The inmates on the transport bus recognized Mr. Washburn's serious medical need and begged COII Tuccino and COII King to rendered medical aid to Mr. Washburn.

119.  Examples of Defendant Tuccino's deliberate indifference include, but are not limited:

　　a. Undertaking the transport of inmates in Arizona in the summer knowing that there was insufficient ventilation and/or air conditioning on the transport bus;

　　b. Continuing the transport of inmates without keeping contact with ADC;

　　c. Leaving ASPC-Kingman with inmates in the transport bus without having sufficient drinking water;

Page 17 of 23

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

d. Hearing, and being deliberately indifferent to, Mr. Washburn's complaints of overheating;

e. Hearing, and being deliberately indifferent to, Mr. Washburn's pleas for medical attention;

f. Seeing, and being deliberately indifferent to, Mr. Washburn vomiting on himself and being left on the floor of the bus in his own vomit;

g. Seeing, and being deliberately indifferent to, Mr. Washburn experiencing seizures;

h. Seeing, and being deliberately indifferent to, the change in Mr. Washburn's level of consciousness, and ultimately loss of consciousness;

i. Recognizing, but being deliberately indifferent to, Mr. Washburn's seizures;

j. Recognizing, but being deliberately indifferent to, Mr. Washburn's heat-related illness.

120.   Examples of Defendant King's deliberate indifference include, but are not limited:

a. Undertaking the transport of inmates in Arizona in the summer knowing that there was insufficient ventilation and/or air conditioning on the transport bus;

b. Continuing the transport of inmates without keeping contact with ADC;

c. Leaving ASPC-Kingman with inmates in the transport bus without having sufficient drinking water;

d. Hearing, and being deliberately indifferent to, Mr. Washburn's complaints of overheating;

Page 18 of 23

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

1     e. Hearing, and being deliberately indifferent to, Mr. Washburn's

2      pleas for medical attention;

3     f. Seeing, and being deliberately indifferent to, Mr. Washburn

4      vomiting on himself and being left on the floor of the bus in his own

5      vomit;

6     g. Seeing, and being deliberately indifferent to, Mr. Washburn

7      experiencing seizures;

8     h. Seeing, and being deliberately indifferent to, the change in Mr.

9      Washburn's level of consciousness, and ultimately loss of

10      consciousness;

11     i. Recognizing, but being deliberately indifferent to, Mr. Washburn's

12      seizures;

13     j. Recognizing, but being deliberately indifferent to, Mr. Washburn's

14      heat-related illness.

15    121.  Examples of Defendant Gallardo's deliberate indifference include,

16  but are not limited to:

17     a. Knowing, and being deliberately indifferent to, information Mr.

18      Washburn had suffered seizures, heat-related illness, and altered

19      level of consciousness;

20     b. Knowing, and being deliberately indifferent to, delays in getting Mr.

21      Washburn urgent and emergent medical care;

22     c. Knowing, and being deliberately indifferent to, violations of policy

23      that resulted in Mr. Washburn's heat-related illness progressing to

24      his death.

25    122.  Defendants have known since no later than 2010 and the

26  publication of *Graves v. Arpaio*, 623 F.3d 1043 (9th Cir. 2010) that it is a

27  violation of the Eighth Amendment to subject inmates taking psychotropic

28

medications to temperatures exceeding 85 degree.

123. The Constitutional violations as set forth in this Count and as set forth generally in this complaint caused Mr. Washburn to suffer actual and grievous injury, with resulting pre-death pain and suffering.

124. The Constitutional violations as set forth in this Count and as set forth generally in this complaint caused Plaintiffs to suffer harms and losses as surviving statutory beneficiaries of Mr. Washburn.

125. Plaintiffs as stated herein have standing and hereby assert claims under the 8th and 14th Amendments to the United State Constitution.

## COUNT FOUR
### (Deliberate Indifference / 42 U.S.C. § 1983)
### (Defendant Corizon)

126. Plaintiff incorporates the allegations set forth above.

127. Corizon is a for-profit private corporation that contracts with the State of Arizona / Arizona Department of Corrections to provide medical, dental, and mental health care to inmates in the custody of ADC.

128. As a for-profit private corporation, Corizon has a financial incentive to delay and/or deny inmates access to outside medical care.

129. Corizon is a state actor as that term is used in the jurisprudence of federal civil rights law, 42 U.S.C. § 1983.

130. As set forth in this Count and through this Complaint, Corizon was deliberately indifferent to the serious medical need of Monnie Washburn, an inmate in the custody of ADC.

131. The serious medical need was identified to Corizon at or before 5:03 p.m. on June 20, 2017, when Corizon was notified that Mr. Washburn was

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ● Fax: (602) 265-0267

suffering from vomiting and severe dehydration, which is an urgent/emergent medical requiring treatment by an appropriate medical provider.

132. Rather than divert the transport to an appropriate health care provider, Corizon advised officers to continue to transport Mr. Washburn to ASPC-Tucson.

133. Deliberate indifference to Mr. Washburn's serious medical need is demonstrated by Corizon's failure to advise officers to access urgent and/or emergent medical care.

134. Falsification of the medical record by Corizon is evidence of willful or malevolent intent.

135. Corizon violated Mr. Washburn's right to be free from cruel and unusual punishment.

136. Corizon violated Plaintiffs' rights under the 14th Amendment to familial association.

137. As a result of the conduct alleged in this Count and throughout this Complaint, Monnie Washburn suffered actual injury resulting in needless pre-death pain and suffering.

138. As a result of the conduct alleged in this Count and through this Complaint, Plaintiffs suffered harms and losses, including the loss of Mr. Washburn.

## COUNT FIVE

### (All Defendants)

51. 139. As set forth above, Monnie Washburn's death was caused by wrongful act, neglect, or default.

52. 140. The act, neglect, or default as set forth above in this complaint, if death had not ensued, would have entitled Mr. Washburn to maintain an

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Formatted: Font: Century Schoolbook

Formatted: Indent: Left: 0.06"

Formatted: Font: Century Schoolbook

action to recover damages in respect thereof.

141. As a result, Defendants are liable to Plaintiff and the statutory beneficiaries of Monnie Washburn for damages that resulted from Mr. Washburn's death.

53.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.   For special damages;

B.   For lost wages, income, and other economic losses;

C.   For other general damages, including but not limited to pain and suffering, loss of enjoyment of life and other emotional trauma;

D.   For exemplary damages to the extent permitted by law;

E.   For taxable costs and pre- and post-judgment interest to the extent permitted by law;

F.   Such other relief as the Court deems just and proper.

DATED this November 21, 2018.

ROBBINS & CURTIN, p.l.l.c.

By: _____
Joel B. Robbins

/s/ Anne E. Findling
Attorney
Anne E. Findling
301 E. Bethany Home Road, Suite B-100
Phoenix, Arizona 85012

Page 22 of 23

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax:   (602) 265-0267



1   *Attorneys for Plaintiff*

2

3

4   The foregoing electronically filed
5   this November 21, 2018 to:

6   Clerk of the Court
7   Maricopa County Superior Court

8   COPIES of the foregoing e-served/emailed this same day to:

9   Mandi J. Karvis
10  Anngelica N. Davis
    WICKER SMITH O'HARA McCOY & FORD, P.A.
11  One N. Central Ave., Suite 885
12  Phoenix, AZ 85004
    *Attorneys for Defendants*

13

14  By: /s/ Kimberly A. Wolf
15

16

17

18

19

20

21

22

23

24

25

26

27

28

Page 23 of 23

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Formatted: Font: Italic
Formatted: Indent: Left: 0"
Formatted: Font: 13 pt, Italic
Formatted: Font: Times New Roman, Italic
Formatted: Signature Block, Left, Add space between paragraphs of the same style, Line spacing: single, Tab stops: Not at -0.6" + -0.1" + 0" + 0.4" + 0.9" + 1.4" + 1.9" + 2.4" + 2.9" + 3.4" + 3.9" + 4.4" + 4.9" + 5.4" + 5.9" + 6.4"
Formatted: Indent: Left: 0"
Formatted: Underline

Clerk of the Superior Court
*** Electronically Filed ***
G. Verbil, Deputy
2/6/2019 8:00:00 AM
Filing ID 10131285

1  Joel B. Robbins (011065)
2  Anne E. Findling (010871)
   ROBBINS & CURTIN, P.L.L.C.
3  301 E. Bethany Home Road, Suite B-100
   Phoenix, Arizona 85012-0001
4  Telephone: (602) 285-0100
5  Facsimile: (602) 265-0267
   joel@robbinsandcurtin.com
6  anne@robbinsandcurtin.com

7
   *Attorneys for Plaintiff*
8

9        IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
10
         IN AND FOR THE COUNTY OF MARICOPA
11

12 | JENNIFER POWER, individually and   | No.  CV2018-008861
13 | on behalf of the statutory beneficiaries |
   | of MONNIE WASHBURN, Deceased;   |
14 | ESTATE OF MONNIE WASHBURN,     |
15 |                                 |
   |          Plaintiff,             |
16 |                                 |              ORDER
   |    vs.                          |
17 |                                 |
18 | STATE OF ARIZONA, a governmental |
   | entity; CORIZON HEALTH, INC., a  |
19 | Missouri corporation, doing business in the |
   | State of Arizona; CORIZON, INC., a |
20 | Missouri corporation, doing business in the |
   | State of Arizona; CORIZON, LLC, a foreign |
21 | limited liability company,       |
22 |                                 |
23 |          Defendants.            |
24

25        Pursuant to the Motion of counsel for the Plaintiffs herein,

26        IT IS ORDERED that the First Amended Complaint attached as Exhibit 1 to

27 Plaintiffs' Motion may be filed and made part of the record.

28 //

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax:   (602) 265-0267

1

2 **DATED** this _____ day of _____, 2019.

3

4 _____

5 Honorable Hugh Hegyi

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

# eSignature Page 1 of 1

Filing ID: 10131285   Case Number: CV2018-008861
Original Filing ID: 10036109

Granted as Submitted



/S/ Colleen French Date: 2/5/2019

Judicial Officer of Superior Court

**ENDORSEMENT PAGE**

CASE NUMBER: CV2018-008861                    SIGNATURE DATE: 2/5/2019

E-FILING ID #: 10131285                          FILED DATE: 2/6/2019 8:00:00 AM


ANNE E FINDLING



MANDI J KARVIS

Joel B. Robbins (011065)
Anne E. Findling (010871)
ROBBINS & CURTIN, P.L.L.C.
301 E. Bethany Home Road, Suite B-100
Phoenix, Arizona 85012-0001
Telephone: (602) 285-0100
Facsimile: (602) 265-0267
joel@robbinsandcurtin.com
anne@robbinsandcurtin.com
*Attorneys for Plaintiff*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| JENNIFER POWER, individually and on behalf of the statutory beneficiaries of MONNIE WASHBURN, Deceased; ESTATE OF MONNIE WASHBURN, <br><br> Plaintiff, <br><br> vs. <br><br> STATE OF ARIZONA, a governmental entity; CORIZON HEALTH, INC., a Missouri corporation, doing business in the State of Arizona; CORIZON, INC., a Missouri corporation, doing business in the State of Arizona; CORIZON, LLC, a foreign limited liability company, CORRECT CARE SOLUTIONS, LLC a foreign limited liability company doing business in Arizona; THE GEO GROUP, INC., a Florida Corporation doing business in Arizona; CORRECTIONS OFFICER DALE A. KING, individually; CORRECTIONS OFFICER ANTONIO R. TUCCINO, individually; SERGEANT STEVEN GALLARDO, individually; <br><br> Defendants. | No.  CV2018-008861 <br><br><br> **FIRST AMENDED COMPLAINT** <br><br> (Wrongful Death) <br><br><br> **(Jury Trial Requested)** |

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax:   (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Plaintiff Jennifer Power, individually and on behalf of the statutory beneficiaries of Monnie Washburn, and in her capacity as personal representative of the Estate of Monnie Washburn, deceased, for her Complaint against Defendants, allege as follows:

## PARTIES

1.     Plaintiff, Jennifer Power, is the wife of Monnie Washburn, deceased, and brings this action individually and on behalf of the statutory beneficiaries of Monnie Washburn.

2.     Jennifer Power is also the duly appointed personal representative of the Estate of Monnie Washburn, Maricopa County Superior Court No. PB2018-003467.

3.     Mr. Washburn is also survived by two children, who are statutory beneficiaries pursuant to A.R.S. § 12-612 (A).

4.     Decedent Monnie Washburn was a resident of the State of Arizona.   Although incarcerated within the Arizona Department of Corrections (ADC) at the time of his death, Mr. Washburn's residence was in Maricopa County, Arizona prior to his incarceration.  Mr. Washburn died on June 20, 2017.

5.     At the time of his death, Mr. Washburn was actively being treated for mental illness and was being prescribed psychotropic medications as reflected in his ADC assigned mental health score of 3M.

6.     The State of Arizona is a body politic; the Arizona Department of Corrections is a department of the State of Arizona.

7.     The State of Arizona has a non-delegable duty for the care and custody of inmates within the Arizona State Prison System, including providing health care services to those incarcerated in the system.

8.     The State of Arizona is responsible for the actions of ADC, its

medical and mental health staff, its corrections staff, and other ADC employees.

9.     The State of Arizona promulgates Department Orders, General Orders, Directors Instructions, Post Orders, and other rules and regulations to ensure the safety of the community, the safety of employees of ADC, and the safety of inmates in ADC's custody (collectively "ADC Policy.")

10.    The State of Arizona mandates the training, retraining, and currency training for ADC employees (collectively "ADC Training") on ADC Policy.

11.    The State of Arizona protects certain aspects of ADC Policy from public disclosure.

12.    Pursuant to A.R.S. § 31-201.01, any and all causes of action which may arise out of tort caused by the director, prison officers or employees of the department, within the scope of their legal duty, shall run only against the State.

13.    Defendants Corizon Health, Inc., Corizon, Inc. and Corizon LLC are related, for-profit foreign business entities, who contract and conduct business within the State of Arizona. These entities will be referred to as "Corizon."

14.    Corizon has a corporate office in Maricopa County, Arizona. Corizon also conducts business in Maricopa County and other locations within the State of Arizona.

15.    Effective March 4, 2013, Defendant Corizon Health, Inc. contracted with the State of Arizona to provide full service medical, mental health, and dental care (collectively "healthcare") to the inmates housed at ASPC-Douglas, ASPC-Phoenix, ASPC-Eyman, ASPC-Safford, ASPC-Florence, ASPC-Tucson, ASPC-Lewis, ASPC-Winslow, ASPC-Perryville, ASPC-Yuma.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

16.   The State of Arizona retained monitoring responsibility for Defendant Corizon's provision of health care to inmates within the Arizona Department of Corrections prison system.

17.   Defendant Correct Care Solutions, LLC ("Correct Care") is a foreign limited liability company doing business in the State of Arizona. Correct Care is a contracted provider for medical and mental health care to inmates housed at ASPC-Kingman.

18.   Defendant GEO Group ("GEO") is a foreign for-profit corporation doing business in the State of Arizona. GEO Group contracts with the State of Arizona to operate the prison complex at ASPC-Kingman. Geo Group is responsible for the actions of its employees, contractors and agents in the scope of their engagement.

19.   ADC Policy requires inmates to be provided opportunities for reasonable and appropriate access to a community standard of health care and appropriate referrals for inmates who appear for treatment.

20.   ADC Policy requires corrections officers and others charged with the supervision of inmates to regularly conduct health and safety checks, and to record those checks.

21.   ADC Policy requires corrections officers to respond to medical emergencies involving inmates within three minutes. Examples of medical emergencies for which officers receive training include seizures, heat exhaustion, and heat stroke.

22.   ADC Policy requires corrections officers who are transporting inmates within the state to conduct regular equipment checks of security devices and transportation vehicles.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

23.   ADC Policy requires corrections officers to keep accurate records of health and safety checks of inmates and to regularly report those security checks.

24.   ADC Policy provides for emergency response through its Incident Command System ("ICS"). One purpose of ICS is to mobilize resources during an emergency for the safety of the community, the staff, and the inmates.

25.   Defendant Corrections Officer Dale A. King ("CO King") is or was an employee of the State of Arizona as a corrections officer at the time of the events that give rise to this action.

26.   Defendant Corrections Officer Antonio R. Tuccino ("CO Tuccino") is or was an employee of the State of Arizona as a corrections officer at the time of the events that give rise to this action.

27.   Defendant Corrections Sergeant Steven Gallardo ("Sgt. Gallardo") is or was an employee of the State of Arizona as a corrections sergeant at the time of the events that give rise to this action.

28.   Defendants King, Tuccino, and Gallardo are named individually for purposes of a federal civil rights claim pursuant to 42 U.S.C. § 1983. Defendants King, Tuccino, and Gallardo are state actors as that term is used in the jurisprudence of federal civil rights law. Defendants King, Tuccino and Gallardo acted under color of state law.

29.   Corizon, Correct Care, and Geo Group have caused events to occur in the State of Arizona and are subject to this Court's jurisdiction.

## JURISDICTION AND VENUE

30. The amount in controversy exceeds the jurisdictional threshold of the Court.

31. A timely notice of claim pursuant to A.R.S. § 12-821.01 was served on Defendant State of Arizona on December 15, 2017.  More than sixty (60)

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

days have passed since this Notice of Claim was served upon the Defendant. By operation of statute, the claim is deemed denied.

32. This is an action against the State of Arizona. Venue is proper in the Superior Court in and for Maricopa County.

33. This Court has jurisdiction for claims made under 42 U.S.C. § 1983. A trial by jury is demanded for all claims asserted in this action.

## FACTUAL BACKGROUND

34. At times relevant to the present dispute, Monnie Washburn was an inmate within the Arizona Department of Corrections, housed at the Arizona State Prison Complex at Kingman, Arizona (ASPC-Kingman).

35. Monnie Washburn was serving a term of incarceration, with a maximum end date of February 15, 2019.

36. On June 20, 2016, Mr. Washburn was being transferred from ASPC-Kingman, operated by Geo Group, to a state-run prison facility in Tucson (ASPC-Tucson).

37. Upon information and belief, Geo Group and/or Correct Care was responsible for ensuring that Mr. Washburn's medical and/or mental health conditions were accurately and timely reported in anticipation of the transfer from ASPC-Kingman to ASPC-Tucson.

### Medications

38. Corizon and/or Correct Care prescribed and administered to Mr. Washburn the following medications: Prozac, Risperdal, and Cogentin. All of these medications increased Mr. Washburn's risk of hyperthermia.

39. Risperdal (risperidone) is known to cause disruption of body temperature regulation. Both hyperthermia and hypothermia have been reported in association with oral risperidone. Per labeling, caution is advised when patients will be exposed to temperature extremes.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

40.     Individuals such as Mr. Washburn who take antipsychotic agents, including risperidone, are also at risk for neuroleptic malignant syndrome (NMS). This syndrome can cause high fever (102-104 degrees), muscle stiffness, excessive sweating, anxiety, fast or abnormal heart beat, increased saliva, and quick breaths.

41.     Cogentin (benztropine), when given concomitantly with drugs that have anticholinergic or antidopaminergic activity (such as Risperidone), may cause fever or heat intolerance. Paralytic ileus, hyperthermia, and heat stroke, with associated fatalities, have been reported.

42.     Prozac (fluoxetine) may cause serotonin syndrome. This adverse event may lead to autonomic instability, which may include hyperthermia.

43.     The risks associated with these medications are known by any reasonably trained prescriber.

### Transport

44.     On June 20, 2017, Mr. Washburn was scheduled to be transferred from ASPC-Kingman to ASPC-Tucson.

45.     The air conditioning in the transport bus was reportedly not functioning.

46.     It was also reported that the bus was overheating and was only able to travel at a speed of 30-35 miles per hour due to the heat.  According to the National Weather Service, the temperature in Tucson hit 116 degrees that day.  Phoenix experienced record heat of 119º.

47.     COII King was driving the transport van during a portion of the trip and/or was present in the van during the transport; COII Tuccino also drove the transport van during a portion of the trip and was present in the van during the transport.

48.     Sergeant Steven Gallardo supervised COII King and COII

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Tuccino.

49.     On June 20, 2017, at approximately 4:30 a.m., COII King and COII Tuccino left ASPC-Tucson in transportation bus G819FG with 38 inmates en route to ASPC-Kingman.

50.     COII King and COII Tuccino arrived at ASPC-Kingman at approximately 10:00 a.m.

51.     COII King and COII Tuccino left ASPC-Kingman at approximately 1:05 p.m. with 11 inmates, including Mr. Washburn, with COII Tuccino driving and COII King as passenger.

52.     At the time the transport bus left Kingman, COII King and COII Tuccino knew that it was hot in the passenger compartment of the transport bus and that they did not have adequate water to meet the needs of the inmates they were transporting, including Mr. Washburn.

53.     COII King and COII Tuccino's route of travel from ASPC-Kingman to ASPC-Tucson took them through or near the Arizona cities of Wikieup, Wickenburg, Phoenix, and Marana, near ADC's prison complexes at Perryville and Phoenix with medical units, and near hospitals equipped to accept inmate patients for urgent or emergent care.

54.     At approximately 3:05 p.m., just prior to the Town of Wikieup, Mr. Washburn began to pace inside the transport bus and complain about the heated temperature within the bus. Mr. Washburn asked for water, asked for medical help, and tried to remove his restraints, resulting in scrapes to his wrists.

55.     COII King threatened Mr. Washburn with a pepper ball launcher and directed him to sit down. Mr. Washburn complied with COII King's request.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax:    (602) 265-0267

56.   Neither COII King nor COII Tuccino informed a supervisor, contacted ADC, or initiated an ICS.

57.   The transportation team stopped in Wikieup to fuel the transport bus but were unable to due so, reportedly because of a problem with the fuel card.

58.   COII King and COII Tuccino chose to continue to Wickenburg (approximately 75 miles) from Wikieup.

59.   Outside of Wikieup, COII Tuccino pulled the bus to the side of the road because the check engine light and the temperature light came on. The bus was stopped on the side of the road for approximately 10 minutes until the emergency lights went out and the gauge showed the engine had cooled.

60.   Neither COII King nor COII Tuccino informed a supervisor, contacted ADC, or initiated an ICS.

61.   COII King and COII Tuccino subjected Mr. Washburn and the other inmates on the transport bus to increasingly hot temperatures within the bus.

62.   In violation of policy, and without informing a supervisor, ADC, or initiating an ICS, COII King and COII Tuccino opened the door to the inmate passenger area of the bus and removed an ice chest ("igloo") to refill the igloo with ice and water at Filiberto's restaurant.

63.   Mr. Washburn informed the officers that he was overheated and needed medical attention, but neither COII King nor COII Tuccino informed a supervisor, contacted ADC, or initiated an ICS.

64.   At or before 4:35 p.m., Mr. Washburn suffered a seizure and became unresponsive. Neither COII King nor COII Tuccino informed a supervisor, contacted ADC, or initiated an ICS.

65.   At or near that time, Mr. Washburn vomited. Neither COII King

nor COII Tuccino did anything to assist Mr. Washburn, despite being urged by the inmates on the transport bus to help him.

66.    At 4:40 p.m., COII Tuccino finally contacted Sgt. Gallardo. Sgt. Gallardo did not advise the officers to initiate an ICS or to divert the transport bus to an available state prison complex and/or medical center.

67.    Sgt. Gallardo contacted Licensed Practical Nurse Nidia Salazar ("LPN Salazar"), an employee and/or agent of Corizon.

68.    Upon information and belief, Sgt. Gallardo told LPN Salazar that Mr. Washburn had suffered a seizure, was overheated, was unresponsive to commands, had vomited repeatedly, but was still breathing.

69.    LPN Salazar did not ask to speak to the transporting officers directly, did not ask for a medical or mental health history, did not access Mr. Washburn's medical records, and did not seek clarification of Mr. Washburn's condition.

70.    LPN Salazar spoke to an "on-call" doctor.  The "on-call" doctor did not speak to the transporting officers directly, did not ask for a medical or mental health history, did not access Mr. Washburn's medical records, and did not seek clarification of Mr. Washburn's condition.

71.    COII King and COII Tuccino did not initiate ICS, and instead had Mr. Washburn lay on the floor of the bus, while they continued to ASPC-Tucson. Mr. Washburn continued to vomit.

72.    Sgt. Gallardo delayed contacting COII King and COII Tuccino for almost an hour.

73.    At some point near Marana, Arizona, COII King and COII Tuccino finally initiated an ICS.

### Delayed Medical Response

74.    Mr. Washburn's  medical  record  documented  that  he  was

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

prescribed three medications: Prozac, Risperdal, and Cogentin. The record also documented that he was seriously mentally ill (SMI).

75.     At 5:03 p.m., LPN Salazar documents: "IM [Mr. Washburn] is in transit from Kingman Private Prison to Tucson Complex." LPN Salazar further documents: "IM [Mr. Washburn] is vomiting and appears to be severely dehydrated."

76.     Severe dehydration/hypovolemia is a known life-threatening medical condition that requires urgent and/or emergent interventions. Untreated dehydration / hypovolemia can result in seizure, coma, and death.

77.     Mr. Washburn's death was pronounced at 7:58 P.M.

78.     At 10:00 p.m., after Mr. Washburn died, LPN Salazar documented that she had earlier been told that Mr. Washburn "was vomiting and feeling malaise."

79.     "Feeling malaise" is not synonymous with "severely dehydrated." "Feeling malaise" suggests that a patient has a general feeling of discomfort, illness, or lack of well-being.

80.     LPN Salazar was never told that Mr. Washburn was "feeling malaise" and her documentation to that effect in Corizon's medical record is a fabrication designed to deflect responsibility for having failed to appropriately and timely triage Mr. Washburn's serious medical condition.

81.     According to the record, LPN Salazar knew that Mr. Washburn suffered from paranoid schizophrenia and was prescribed psychotropic medications.

## Arrival at ASPC Tucson

82.     Shortly before the arrival of the transport bus at ASPC-Tucson medical staff from the prison were contacted and were standing by in the sally port. Tucson Fire Department paramedics were en route when the bus

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

arrived. Monnie Washburn was taken off the bus, apneic and unresponsive, and CPR was initiated. CPR continued for another 30 minutes before paramedics pronounced death.

83. The Pima County Medical Examiner's Office concluded that Mr. Washburn died of heat stroke/hyperthermia.

84. COII King and COII Tuccino failed to initiate ICS at approximately 1505 hours, when Mr. Washburn began to behave erratically and tried to remove his restraints. They failed to initiate ICS at approximately 1635 hours, when it was reported that Mr. Washburn had seizure like symptoms, vomited and became unresponsive.

85. COII King and COII Tuccino did not contact their supervisor, Sgt. Gallardo, regarding the issues with Mr. Washburn until 1640 hours. Sgt. Gallardo did not elevate the issues regarding inmate Washburn to his supervisor, Lt. Baker, until 1858 hours. ICS was initiated by COII Tuccino, at the direction of Lt. Baker at approximately 1911 hours.

86. ADC Central Communications was not aware of the issues regarding Mr. Washburn until ICS was initiated at 1911 hours.

87. COII King and COII Tuccino admitted they did not render aid to Mr. Washburn within three minutes of becoming aware of Mr. Washburn being unresponsive or in medical crisis.

88. COII King, COII Tuccino, and Sgt. Gallardo violated Department Order 705, Department Order 807, and Duty Specific Post Order #26.

89. One or more employees of ADC and/or Corizon lied to paramedics and said that Mr. Washburn had become unresponsive at 6:50 p.m.

**CLAIMS FOR RELIEF**
**COUNT ONE**
**NEGLIGENCE**
**(State of Arizona / Corizon / Geo Group / Correct Care)**

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

90.    The foregoing paragraphs are incorporated as if full set forth herein.

91.    Defendant State of Arizona through ADC owes and owed a non-delegable duty of care to inmates in its custody, including Monnie Washburn, which duty includes taking reasonable steps to recognize the need for, and provide, medical attention and intervention.

92.    Defendant State of Arizona through ADC owes and owed a non-delegable duty of care to inmates in its custody, including Monnie Washburn, which duty also includes taking reasonable and necessary steps to reduce the risk that inmates taking certain medications are exposed to extreme temperatures known to put those inmates at risk for hyperthermia and other medication-related complications.

93.    Defendant State of Arizona through ADC owes and owed a non-delegable duty of care to provide safe transport for inmates in its custody, including Monnie Washburn, which duty includes taking reasonable steps to ensure that transport vehicles are safe and do not present an unreasonable risk of harm to inmates.

94.    Geo Group owes and owed a duty to inmates in its custody, including Monnie Washburn, which duty includes taking reasonable steps to reduce the risks that inmates taking certain medications are exposed to extreme temperatures known to put those inmates at risk for hyperthermia and other medication-related complications.

95.    Geo Group, Correct Care and Corizon owe and owed a duty of care to Mr. Washburn to inform ADC of his medication status and any risk inherent in that medication status.

96.    Corizon owes and owed a duty of care to Mr. Washburn to provide accurate and appropriate information to minimize the risk of complications

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

from known medical conditions and to adequately respond to urgent and/or emergency medical conditions.

97.     Correct Care owes and owed a duty of care to Mr. Washburn to ensure that known medical and mental health conditions are communicated when an inmate is transported.

98.     Defendants observed that Monnie Washburn was dangerously ill and needing medical intervention and supervision and failed to report or otherwise act upon their observations that Monnie Washburn was dangerously ill and needing medical intervention and supervision.

99.     Defendants were negligent and/or grossly negligent by failing to recognize Monnie Washburn's need for medical intervention, and by having failed to provide such medical attention.

100.     Defendants breached their duty of care (1) by failing to take appropriate steps to protect Mr. Washburn from known risks of complications of his medications; (2) by forcing Mr. Washburn to unnecessarily endure life-threatening conditions during the transport; (3) by ignoring his pleas for help; (4) by ignoring the warnings of other inmates that Mr. Washburn was in trouble; and (5) by failing to provide Mr. Washburn access to timely medical care for his emergent medical condition.

101.     Defendants' negligence was the direct and proximate cause of the death of Plaintiffs' decedent Monnie Washburn; such death would not have happened without Defendants' negligence.

102.     Monnie Washburn's death caused injury and loss to Plaintiff and the statutory beneficiaries of Monnie Washburn.

## COUNT TWO
## MEDICAL NEGLIGENCE
### (Corizon)

103.     The foregoing paragraphs are incorporated as if full set forth

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

herein.

104.   As set forth above, Corizon and/or Correct Care prescribed medications to Monnie Washburn that they knew would increase Mr. Washburn's risk of adverse side effects, including hypothermia and death.

105.   Corizon and/or Correct Care failed to take steps to mitigate the risk of death, including, upon information and belief, failing to warn Defendant State of Arizona of the risk of transporting Mr. Washburn in a transport van without air conditioning in the Arizona summer heat.

106.   Once Corizon learned of Mr. Washburn's emergent condition during transport, Corizon failed to provide appropriate advice to officers, including the recommendation that Mr. Washburn be taken immediately to a higher level of care to prevent his death.

107.   After Mr. Washburn's death, employees of Corizon falsified the medical record to deflect responsibility for their negligence.

108.   Defendants ADOC, Corizon, and their employees are health care providers and, as such, owe and owed Monnie Washburn the duty to exercise that degree of care, skill, and learning that would be expected under similar circumstances of a reasonably prudent health care provided within this state.

109.   Were it not for the failure of Defendants and their employees to comply with the applicable standard of care, Monnie Washburn would have received timely medical treatment and would not have died.

110.   Monnie Washburn's death caused injury and loss to Plaintiffs and the statutory beneficiaries of Monnie Washburn.

## COUNT THREE

### (Deliberate Indifference / 42 U.S.C. § 1983)

### (Individual Defendants Tuccino, King, and Gallardo)

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

111.    Plaintiff incorporates the allegations set forth above.

112.    On June 20, 2017, Monnie Washburn was incarcerated within the Arizona Department of Corrections.

113.    During the transport as described in this Complaint, Mr. Washburn presented with a serious medical need requiring prompt medical attention including transport to a facility where he could receive medical attention.

114.    The serious medical need began when Mr. Washburn began to complain that he was hot and needed medical care.

115.    The serious medical need continued and became more urgent, as Mr. Washburn suffered seizures, vomiting, heat exhaustion, heat stroke, hypovolemia, hyperthermia, dehydration, and loss of consciousness.

116.    During the transport, Mr. Washburn's condition further deteriorated and became life-threatening.

117.    Sgt. Gallardo was informed of Mr. Washburn's serious medical need. Ultimately, Mr. Washburn died because Defendants Tuccino, King, and Gallardo were deliberately indifferent to his medical needs.

118.    The inmates on the transport bus recognized Mr. Washburn's serious medical need and begged COII Tuccino and COII King to rendered medical aid to Mr. Washburn.

119.    Examples of Defendant Tuccino's deliberate indifference include, but are not limited:

    a.  Undertaking the transport of inmates in Arizona in the summer knowing that there was insufficient ventilation and/or air conditioning on the transport bus;

    b.  Continuing the transport of inmates without keeping contact with ADC;

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

c.  Leaving ASPC-Kingman with inmates in the transport bus without having sufficient drinking water;

d.  Hearing, and being deliberately indifferent to, Mr. Washburn's complaints of overheating;

e.  Hearing, and being deliberately indifferent to, Mr. Washburn's pleas for medical attention;

f.  Seeing, and being deliberately indifferent to, Mr. Washburn vomiting on himself and being left on the floor of the bus in his own vomit;

g.  Seeing, and being deliberately indifferent to, Mr. Washburn experiencing seizures;

h.  Seeing, and being deliberately indifferent to, the change in Mr. Washburn's level of consciousness, and ultimately loss of consciousness;

i.  Recognizing, but being deliberately indifferent to, Mr. Washburn's seizures;

j.  Recognizing, but being deliberately indifferent to, Mr. Washburn's heat-related illness.

120.  Examples of Defendant King's deliberate indifference include, but are not limited:

a.  Undertaking the transport of inmates in Arizona in the summer knowing that there was insufficient ventilation and/or air conditioning on the transport bus;

b.  Continuing the transport of inmates without keeping contact with ADC;

c.  Leaving ASPC-Kingman with inmates in the transport bus without having sufficient drinking water;

d. Hearing, and being deliberately indifferent to, Mr. Washburn's complaints of overheating;

e. Hearing, and being deliberately indifferent to, Mr. Washburn's pleas for medical attention;

f. Seeing, and being deliberately indifferent to, Mr. Washburn vomiting on himself and being left on the floor of the bus in his own vomit;

g. Seeing, and being deliberately indifferent to, Mr. Washburn experiencing seizures;

h. Seeing, and being deliberately indifferent to, the change in Mr. Washburn's level of consciousness, and ultimately loss of consciousness;

i. Recognizing, but being deliberately indifferent to, Mr. Washburn's seizures;

j. Recognizing, but being deliberately indifferent to, Mr. Washburn's heat-related illness.

121.   Examples of Defendant Gallardo's deliberate indifference include, but are not limited to:

a. Knowing, and being deliberately indifferent to, information Mr. Washburn had suffered seizures, heat-related illness, and altered level of consciousness;

b. Knowing, and being deliberately indifferent to, delays in getting Mr. Washburn urgent and emergent medical care;

c. Knowing, and being deliberately indifferent to, violations of policy that resulted in Mr. Washburn's heat-related illness progressing to his death.

122.   Defendants have known since no later than 2010 and the

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax:   (602) 265-0267

publication of *Graves v. Arpaio,* 623 F.3d 1043 (9th Cir. 2010) that it is a violation of the Eighth Amendment to subject inmates taking psychotropic medications to temperatures exceeding 85 degree.

123.   The Constitutional violations as set forth in this Count and as set forth generally in this complaint caused Mr. Washburn to suffer actual and grievous injury, with resulting pre-death pain and suffering.

124.   The Constitutional violations as set forth in this Count and as set forth generally in this complaint caused Plaintiffs to suffer harms and losses as surviving statutory beneficiaries of Mr. Washburn.

125.   Plaintiffs as stated herein have standing and hereby assert claims under the 8th and 14th Amendments to the United State Constitution.

## COUNT FOUR

### (Deliberate Indifference / 42 U.S.C. § 1983)

### (Defendant Corizon)

126.    Plaintiff incorporates the allegations set forth above.

127.   Corizon is a for-profit private corporation that contracts with the State of Arizona / Arizona Department of Corrections to provide medical, dental, and mental health care to inmates in the custody of ADC.

128.   As a for-profit private corporation, Corizon has a financial incentive to delay and/or deny inmates access to outside medical care.

129.   Corizon is a state actor as that term is used in the jurisprudence of federal civil rights law, 42 U.S.C. § 1983.

130.   As set forth in this Count and through this Complaint, Corizon was deliberately indifferent to the serious medical need of Monnie Washburn, an inmate in the custody of ADC.

131.   The serious medical need was identified to Corizon at or before 5:03 p.m. on June 20, 2017, when Corizon was notified that Mr. Washburn

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax:   (602) 265-0267

was suffering from vomiting and severe dehydration, which is an urgent/emergent medical requiring treatment by an appropriate medical provider.

132.   Rather than divert the transport to an appropriate health care provider, Corizon advised officers to continue to transport Mr. Washburn to ASPC-Tucson.

133.   Deliberate indifference to Mr. Washburn's serious medical need is demonstrated by Corizon's failure to advise officers to access urgent and/or emergent medical care.

134.   Falsification of the medical record by Corizon is evidence of willful or malevolent intent.

135.   Corizon violated Mr. Washburn's right to be free from cruel and unusual punishment.

136.   Corizon violated Plaintiffs' rights under the 14th Amendment to familial association.

137.   As a result of the conduct alleged in this Count and throughout this Complaint, Monnie Washburn suffered actual injury resulting in needless pre-death pain and suffering.

138.   As a result of the conduct alleged in this Count and through this Complaint, Plaintiffs suffered harms and losses, including the loss of Mr. Washburn.

## COUNT FIVE
### (All Defendants)

139.   As set forth above, Monnie Washburn's death was caused by wrongful act, neglect, or default.

140.   The act, neglect, or default as set forth in this complaint, if death had not ensued, would have entitled Mr. Washburn to maintain an action to

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

1   recover damages in respect thereof.

2   141.   As a result, Defendants are liable to Plaintiff and the statutory

3   beneficiaries of Monnie Washburn for damages that resulted from Mr.

4   Washburn's death.

## PRAYER FOR RELIEF

6   WHEREFORE, Plaintiff prays for judgment against Defendants as

7   follows:

8   A.   For special damages;

9   B.   For lost wages, income, and other economic losses;

10  C.   For other general damages, including but not limited to pain and

11  suffering, loss of enjoyment of life and other emotional trauma;

12  D.   For exemplary damages to the extent permitted by law;

13  E.   For taxable costs and pre- and post-judgment interest to the extent

14  permitted by law;

15  F.   Such other relief as the Court deems just and proper.

17  DATED this February 6, 2019.

18  **ROBBINS & CURTIN, p.l.l.c.**

20  By:   */s/ Anne E. Findling*

21  Joel B. Robbins

22  Anne E. Findling
    301 E. Bethany Home Road, Suite B-100

23  Phoenix, Arizona 85012
    *Attorneys for Plaintiff*

25  The foregoing electronically filed
    this February 6, 2019 to:

26

27  Clerk of the Court
    Maricopa County Superior Court

28

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

1    COPIES of the foregoing e-served/emailed this same day to:

2    Mandi J. Karvis
3    Anngelica N. Davis
     WICKER SMITH O'HARA McCOY & FORD, P.A.
4    One N. Central Ave., Suite 885
5    Phoenix, AZ 85004
     *Attorneys for Corizon Defendants*

6    Kara Klima
7    Office of the Attorney General
8    Liability Management Section
     2005 N. Central Avenue
9    Phoenix, AZ 85004-1592
     *Attorneys for State Defendants*
10

11

12   By: */s/ Tricia Backus*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267